William P. TAVOULAREAS, et al., Plaintiffs,

v.

Philip PIRO, Defendant.

William P. TAVOULAREAS, et al., Plaintiffs,

v.

The WASHINGTON POST CO., et al., Defendants.

Civ. A. Nos. 80–2387, 80–3032.

United States District Court, District of Columbia.

Nov. 5, 1981.

---

See also, D.C. 93 F.R.D. 11; 93 F.R.D. 35.

John J. Walsh and Jerry Birenz, New York City, and Joseph A. Artabane, Washington, D.C., for plaintiffs.

David E. Kendall and Robert C. Post, Washington, D.C., for defendant Washington Post.

Stanley M. Brand, Gen. Counsel, and Steven R. Ross, Asst. Counsel, Clerk, U.S. House of Representatives, Washington, D.C., for Congressional Deponents.

Joel M. Wolosky, New York City, for defendant Comnas.

David Machanic, Washington, D.C., for defendant Piro.

Judah Best and Loren Kieve, Washington, D.C., for Mobil Oil Corp.

GASCH, District Judge.

Once again, these consolidated cases are before the Court on a discovery-related matter. *See Tavoulareas v. Piro,* 93 F.R.D. 11 (D.D.C.1981) (memorandum & order). Defendant Washington Post Co. (*The Post* or WPC) has filed a motion to compel in which it seeks an order from the Court directing Mobil Corporation and Mobil Oil Corporation (Mobil), non-parties to this litigation, to comply with the terms of two document requests. Mobil, in addition to opposing WPC's motion to compel, has filed a motion for a protective order. *The Post*'s two discovery requests, a revised subpoena duces tecum served on Mobil on May 22, 1981, and a supplemental subpoena duces tecum served on Mobil on July 10, 1981, seek to obtain various documents and other materials regarding William and Peter Tavoulareas, the plaintiffs, Philip Piro, *The Post*'s codefendant, George Comnas, the defendant in Civil Action No. 80–2841 (a related, though nonconsolidated, case), the investigation by the Securities and Exchange Commission (SEC) of the incidents that formed the basis of the articles by *The Post,* and numerous other corporate transactions, including, but not limited to, transactions among, or concerning, Mobil, Saudi Maritime Co. (Samarco), and Atlas Maritime Co. (Atlas). The Court has reviewed the relevant correspondence between Mobil and *The Post,* and is aware of the efforts of counsel to resolve the current discovery dispute without the intervention of the Court. As the cross-motions indicate, however, the two parties remain in significant dispute over a number of issues, both regarding general matters—for example, the cut-off date for any document search—and regarding specific document requests. Accordingly, the Court first will rule on the general issues over which the parties disagree and then will resolve the specific document requests to which Mobil has interposed objections.

## I. GENERAL MATTERS REMAINING IN DISPUTE.

### A. *Cut-off Date for Document Search.*

*The Post* and Mobil disagree over the relevant time period over which Mobil should be required to search for the various documents specified in *The Post*'s subpoenae. Mobil asserts that it should not be required to search for documents generated after December 1, 1979, the date on which *The Post* published the last of the articles that form the basis of plaintiffs' libel suit. Mobil argues that evidence of events after the date of publication is irrelevant to the issue of liability because the statements in *The Post* articles of November 30, 1979, and December 1, 1979, were either true when published or they were not. For its part, *The Post* originally contended that Mobil should be required to search for documents described in the two subpoenae "to the present" because documents created after December 1, 1979, (1) might bear on the truth or falsity of the articles at issue in the suit or (2) might be relevant to whether the plaintiffs were public figures on December 1, 1979. At the hearing on this matter, however, *The Post* indicated its willingness to limit its document request to the period prior to December 31, 1980. After full consideration of the arguments of opposing

counsel, the Court is of the opinion that documents relevant to the issues in this case, or likely to lead to admissible evidence, might have been generated for some time after the date of publication of the last of *The Post* articles on December 1, 1979. Consequently, the Court will grant *The Post*'s request that the cut-off date for document production be set as December 31, 1980, a date which the Court considers necessary to permit *The Post* to obtain discoverable matter relevant to the presentation of its defense. *See Goldinger v. Boron Oil Co.*, 60 F.R.D. 562, 564 (W.D.Pa.1973).

### B. *Time and Place of Compliance.*

█ *The Post* and Mobil also dispute the amount of time necessary for Mobil to comply with the subpoenae, as modified by the Court's order and memorandum issued today. Based upon the representations of counsel and the general magnitude of *The Post*'s document request, the Court has determined that Mobil should respond to the subpoenae of *The Post* within three months of today's date.

To ease the burden on Mobil, however, the Court concludes that Mobil need only produce documents in the District of Columbia when reasonable to do so. By reasonable, the Court means that Mobil is under no obligation to transport to D.C. large volumes of responsive documents from cities where the materials are normally and conveniently maintained. Mobil, however, should endeavor to furnish *The Post* with documents in D.C. when the quantity of responsive material is small and, hence, the burden of production in D.C. is minimal.

### C. *Offices and Departments of Mobil in Which the Document Search Must Be Conducted.*

█ Mobil also has interposed a number of objections to the geographic scope of the document search sought by *The Post*. Mobil first objects to WPC's request that the document search encompass Mobil's General Counsel's Office. Mobil asserts that any responsive, non-privileged documents contained in its General Counsel's Office also

are contained in other offices of Mobil. Because Mobil already has agreed to search these latter offices, counsel for Mobil concludes that all responsive documents in the General Counsel's Office will be produced pursuant to other searches. Consequently, Mobil asserts, a search of the General Counsel's Office would be unduly burdensome and duplicative. *The Post* counters that the search is necessary (1) because Mobil's General Counsel, George Birrell, "has been deeply involved in the subject matter of this lawsuit almost from its inception", Memorandum of Points and Authorities in Support of the Defendant The Washington Post Company's Motion to Compel the Production of Documents at 12 [cited subsequently as Post Memorandum]; and (2) because lawyers are "often better recordkeepers than other persons within businesses." *Id.* at 13.

Given the massive discovery request by *The Post*, and the apparent willingness of Mobil to comply voluntarily with most of the terms of that request, the Court will deny the motion to compel Mobil to search its General Counsel's Office. The request appears to be unduly duplicative and sufficiently burdensome to warrant protection of Mobil, nonparties to this action. The possibility that some additional, non-duplicative documents might be located simply does not justify the effort that would be required to search the General Counsel's Office in addition to those offices Mobil already has agreed to search.

█ Mobil's second objection to the geographical scope of the search pertains to *The Post*'s request, in its supplemental subpoena, that Mobil search departments other than its Public Affairs Department for information concerning the public figure status of William Tavoulareas. Mobil contends that a search outside the Public Affairs Department is unlikely to produce enough relevant material regarding the public figure issue to justify the enormous amount of time and effort that would be required to comply.

For the most part, the Court is persuaded by Mobil's arguments. The overwhelming

majority of information concerning William Tavoulareas' public figure status is likely to be found in Mobil's Public Affairs Department. That department compiles records of the vast majority of speeches, articles, books, and press releases by, or concerning, Mobil employees—materials highly relevant to the question of William Tavoulareas' public figure status. The Court will rule, therefore, that, with one exception, Mobil need only search its Public Affairs Department for documents responsive to this request. The one exception to this ruling is that Mobil will be ordered to conduct a search of William Tavoulareas' office for any materials relating to the public figure issues raised by WPC's requests. In the Court's opinion, the likelihood that Mr. Tavoulareas' office contains responsive documents in addition to any documents to be found in the Public Affairs Department is sufficient to warrant this further search. By so ruling, the Court seeks to balance The Post's demonstrated need for documents responsive to its requests against Mobil's legitimate interest in protection from duplicitous, burdensome discovery requests.[1]

### D. The Protective Order.

■ The final, and for Mobil the most important, general issue remaining in dispute concerns the question of a protective order. Mobil has moved for a protective order designed to preclude the free use or dissemination of any confidential Mobil documents disclosed during discovery except pursuant to certain judicially-imposed safeguards. Mobil contends that because of its nonparty status and because many of the documents sought by The Post contain a broad range of "highly sensitive and confidential Mobil" information, the Court should issue a general protective order, similar to the one issued by this Court in Habib

v. Raytheon Co., Civil Action No. 78–0286 (D.D.C. Sept. 16, 1980) (memorandum & order), permitting Mobil to designate as confidential any of the material disclosed to The Post as part of Mobil's discovery obligations. See Mobil's (1) Opposition to WPC's Motion to Compel and (2) Cross-Motion for Protective Order at 4 [cited subsequently as Mobil Memorandum]. Mobil also requests other protective provisions, similar to those imposed in Habib, designed to limit the dissemination of competitively-sensitive Mobil documents. Mobil asserts that these provisions will permit The Post plenary use of the documents produced for any purpose related to this litigation, protect Mobil's legitimate interests in the confidentiality of the financial and other information sought, and conserve judicial resources by necessitating judicial intervention only when The Post objects to the designation of particular documents as "confidential."

The Post opposes Mobil's motion for a protective order on a number of grounds. First, The Post argues that, to support a motion for a protective order under Fed.R. Civ.P. 26(c), a party must show specific and identifiable harm that is likely to result from the disclosure of particular documents. Post Memorandum at 9 (quoting United States v. IBM, 67 F.R.D. 40, 46 (S.D.N.Y. 1975)). The Post contends that Mobil's current motion, even as buttressed by the affidavit of Mobil Director Walter E. MacDonald, fails to identify any specific or identifiable harm that is likely to result from the disclosure of any of the documents requested. Indeed, Mobil characterizes Mobil's allegations of potential competitive harm as "conclusory." In addition, The Post raises a first amendment argument concerning the constitutionality of a broad protective order of the kind proposed by Mobil. The Post cites In re Halkin, 598 F.2d 176 (D.C.Cir.

---

1. The Court also notes, with approval, counsel's agreement at the hearing on this matter regarding documents relating to Peter Tavoulareas. Mobil originally objected to The Post's request that Mobil conduct a separate search of its records for documents concerning Peter Tavoulareas, who is not and never has been an employee of Mobil. Pursuant to agreement, however, The Post and Mobil have arrived at the following resolution of this dispute: Mobil need not conduct a separate search of its Public Affairs or other records for materials pertaining to Peter Tavoulareas, but will produce, in connection with other legitimate searches for responsive documents, any materials that mention Peter Tavoulareas' name and that are otherwise responsive to any of The Post's requests.

1979), for the proposition that a court cannot fashion a protective order restraining expression in the context of ongoing litigation unless

> the harm posed by dissemination [is] substantial and serious; the restraining order [is] narrowly drawn and precise; and there [are] no alternative means of protecting the public interest which intrude less directly on expression.

*Id.* at 191. In other words, *The Post* suggests that the issuance by this Court of a protective order along the lines of the order issued in *Habib* would constitute a prior restraint in violation of the first amendment right of *The Post* to disclose the Mobil information freely.

After thorough consideration of the matter, the Court is convinced that the protective order proposed by Mobil constitutes the best means of resolving the conflict between the legitimate need of WPC for prompt, thorough disclosure and the genuine interest of Mobil in preserving the confidentiality of sensitive corporate documents. Despite *The Post*'s assertions that Mobil's allegations of competitive harm are wholly conclusory and overly general, the Court believes, after review of the MacDonald affidavit, that Mobil has adequately specified the harm likely to result absent a protective order. As Mr. MacDonald attests, the public disclosure of many of these documents might undermine Mobil's relationship with the Kingdom of Saudi Arabia, hamper its ability to compete in the marine transportation business, and threaten its access to substantial volumes of crude oil from Saudi Arabia. Furthermore, many of the discovery requests appear likely to reveal confidential, internal Mobil documents dealing with strategy, negotiations, and long-range corporate planning. The conclusion is inescapable that public disclosure of these kinds of sensitive corporate documents would cause Mobil competitive harm

sufficient to warrant imposition of a protective order adequate in character and balanced to the needs of the parties.

The question that remains concerns the nature of the protective relief necessary under the circumstances. Although the Court is aware of the need to avoid unwarranted restraints on disclosure by narrowly circumscribing the scope of protective relief, the Court also is aware of the need to devise a protective order that will adequately serve the interests of the parties, the litigation, and the Court. Under the circumstances of this case, imposition of the protective order proposed by Mobil appears to be the only efficient way to handle the enormous volume of material sought by *The Post*. In so ruling, the Court rejects *The Post*'s contention that Mobil should specify, and the Court should rule upon, any objections to disclosure of particular documents *now*, prior to disclosure. The Court finds this suggestion untenable for two reasons. First, Mobil's document search would be slowed tremendously if it were required to review each document for possible confidential matter and to prepare a specific objection to disclosure of that document. *Cf. In re Coordinated Pretrial Proceedings in Western Liquid Asphalt Cases*, 18 F.R. Serv.2d 1251, 1252 (N.D.Cal.1974) (noting, but disapproving of, the above option in the context of antitrust discovery). Under the proposed protective order, Mobil would simply note the confidentiality of certain documents produced, based upon a relatively cursory review of the contents or source of the documents,[2] and would then turn them over to *The Post* for use in this litigation. In the event *The Post* then wished to challenge Mobil's designation, WPC counsel could seek an accommodation with Mobil or, as a last alternative, a court ruling that the material is neither confidential nor otherwise privileged.[3] Second, the proposed or-

---

**2.** The Court, however, expresses the hope that Mobil will use its best efforts and invoke the terms of the protective order only when necessary to protect legitimate confidential matter. By so doing, Mobil will help to alleviate the concerns expressed by counsel for WPC that

the news activities of *Post* reporters might be chilled as a result of a broad protective order. *See Reliance Ins. Co. v. Barron's*, 428 F.Supp. 200, 205 (S.D.N.Y.1977).

**3.** Mobil, of course, would then bear the burden

der would help to minimize the role of the Court in the discovery stage by assuring that only those matters over which the parties truly disagree will be brought before the Court for judicial resolution. Absent an objection by *The Post*, the Court will be freed of the time-consuming task of ruling on the numerous claims of confidentiality likely to be raised by Mobil. In the particular context of this case, therefore, Mobil's proposed order, as modified by the Court, is well-suited to accommodate the various practical needs of *The Post*, Mobil, and this Court. *See In re Halkin*, 398 F.2d 176, 196 n.47 (D.C.Cir.1979). Accordingly, the Court will grant Mobil's motion and enter a protective order substantially as proposed by Mobil.[4]

## II. SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS.

The following document requests in *The Post*'s subpoenae constitute the specific discovery matters over which the parties originally disagreed.[5]

*Request 5.* *The Post* and Mobil have agreed that Mobil may respond to request 5 by providing responsive agreements, decisional-type materials, and other documents that establish or demonstrate the substance or effect of the transaction or other matters referred to in request 5. The Court will so order.

■ *Request 11.* This request seeks, from January 1, 1976, to December 31, 1980, all documents turned over to the SEC by Mobil and all testimony by Mobil personnel before the SEC regarding "Mobil's involvement with Samarco, Atlas, and/or plaintiff Peter W. Tavoulareas." Citing as support this Court's decision in *Habib v. Raytheon Co.*, Civil Action No. 78–0286 (D.D.C. Sept. 16, 1980) (memorandum & order), Mobil objects to production on the grounds of overbreadth and irrelevance.

---

of establishing "good cause" for the document's continued protection. *See* Fed.R.Civ.P. 26(c); 4 *Moore's Federal Practice* ¶ 26.68, at 491 (2d ed. 1981).

4. The Court does not find that this Circuit's decision in *In re Halkin*, 598 F.2d 176 (D.C.Cir. 1979), bars the issuance of a protective order of the kind proposed by Mobil and formulated by this Court in *Habib v. Raytheon Co.*, Civil Action No. 78–0286 (D.D.C. Sept. 16, 1980) (memorandum & order). In fact, the *Halkin* court specifically endorsed the use of a broad protective order when the particular circumstances of a case so warrant:

> We recognize that flexibility will be required to accommodate the practical needs of the discovery process with the standards enunciated [in this case], *particularly where the discovery embraces a large quantity of documents.* It may be appropriate, for example, for a trial court (on a proper showing) to issue *a blanket protective order* covering all documents in a large-scale exchange of files without prejudice to raising the merits of the protective order as applied to particular documents at a later time. If a party wishes to disseminate a particular document, he might then inform the opposing party (precisely as plaintiffs have done here). At that point the burden would revert back to the party resisting dissemination to establish "good cause" as applied to the particular document(s), consistent with the standards enunciated in this opinion. This procedure is commonly used

to preserve parties' right to assert claims of privilege with respect to particular documents in complex cases, while at the same time facilitating needed discovery.

598 F.2d at 196 n.47 (emphasis added). In light of the practicalities of this litigation and considering the need to protect certain confidential Mobil documents, as documented in the MacDonald affidavit, the Court has concluded that the accompanying protective order, issued pursuant to Rule 26(c), fully comports with the standards enunciated by the *Halkin* court in the preceding passage. In the event that *The Post* disputes Mobil's designation of any documents as confidential or privileged, and this dispute cannot be resolved amicably by the two parties, *The Post* may seek relief from the Court from the terms of the protective order. At that juncture, Mobil will have the burden of establishing good cause for the continued protection of the disputed documents. *See In re Halkin*, 598 F.2d at 196 n.47.

5. In several instances, *The Post* and Mobil reached an acceptable resolution of the dispute during the course of the hearing on this matter. Consequently, with regard to issues over which the two parties reached agreement, the Court will simply note, with approval, their resolution of the matter and incorporate the terms into the Court's Order. As to issues over which the two parties remain in contention, however, the Court will resolve the matter and enter an appropriate order.

The Court finds Mobil's objections unpersuasive. The SEC investigation of Mobil concerned events and transactions that are directly relevant to issues raised by this lawsuit. Unlike the interrogatory in *Habib*, WPC's request does not seek to explore an area as potentially broad and unfettered as any "questionable payments" or other alleged corporate improprieties by Mobil. Rather, Request 11 is focused on a particular SEC investigation of the particular allegation of corporate impropriety that formed the basis for *The Post* articles at issue in this suit. Consequently, the Court will order production of the documents requested. *Accord, Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353–54 (S.D.N.Y.1973).

*Request 12(g).* This request concerns all documents written or produced by the Arthur Young accounting firm in reviewing charges for services provided by Mobil to Atlas over the period from 1974 to 1979. The parties have agreed, and the Court will so order, that Mobil need comply with Request 12(g) only to the extent that Mobil has any of these documents in its actual possession or custody.

█ *Request 22.* WPC in this request asks for

all contracts, charters, leases, or other arrangements, and the negotiations of such contracts, charters, leases, or other arrangements, under which Atlas is compensated for the management of ships or shipping-related services.

Mobil objects to this request to the extent that it seeks documents other than those that reflect compensation paid to Atlas by Samarco, in which Mobil owns stock, or by Mobil itself. *The Post* responds that documents other than those concerning Atlas' compensation from Samarco or Mobil are needed to compare the compensation received by Atlas from Samarco or Mobil with the compensation received by Atlas from other business entities. Only by comparing Atlas' various shipping contracts, WPC contends, can *The Post* investigate whether Mobil's or Samarco's contracts with Atlas were indeed more lucrative than the contracts entered into by Atlas with other corporate entities.

Based upon *The Post*'s need for some method of comparing Atlas' compensation from various sources, the Court rejects Mobil's suggestion that the request be limited to Samarco/Atlas or Mobil/Atlas documents. The fact that the request seeks documents that concern contracts between Atlas and entities other than Mobil or Samarco does not justify withholding the information if Mobil does, in fact, have custody or control of such documents. *See Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D.Md.1978) (observing that the "crucial factor" mandating production is that the nonparty documents "be in the custody, or under the control of, a party to the case"). Accordingly, the Court will order Mobil to produce any documents in its actual possession or control that are responsive to Request 22.

*Request 25.* This request, which asks for "all written correspondence between Peter Tavoulareas and any officer, director, or employee of Mobil," has essentially been resolved by the parties. As discussed in Part I(C) of this memorandum, during the course of its documents search, Mobil will flag and produce every document that mentions Peter Tavoulareas' name and is otherwise responsive to any of WPC's document requests. Mobil, however, need not conduct a separate document search for documents relating to Peter Tavoulareas, who is not, and never has been, a Mobil employee.

*Request 32.* This request, which seeks any and all documents relating to Mobil's account for Atlas, has been resolved by agreement as well. Mobil will produce all the actual invoices for this account and a list of all billings. In the event that Mobil discovers any documents referring to Peter Tavoulareas during the course of this search, Mobil will disclose them pursuant to its agreement to produce materials mentioning Peter Tavoulareas.

*Request 33.* *The Post* asks for any and all documents relating to

[a]ll documents indicating satisfaction or dissatisfaction on the part of Samarco or

its shareholders, or on the part of any shareholder, officer, or employee of Atlas, with the performance of George Comnas as an employee or officer of Atlas, or with any transactions in which George Comnas played a major or significant role as an officer or employee of Atlas, and all documents reflecting the basis for such satisfaction or dissatisfaction.

Mobil has offered to respond to this document specification by producing "documents in its possession indicating satisfaction or dissatisfaction on the part of Atlas, Samarco, or Samarco's shareholders with the performance of George Comnas as an employee or officer of Atlas." The Court accepts Mobil's proposed response to Request 33 as a reasonable alternative to The Post's rather broad, original request and will order production on that basis. Mobil, therefore, need not respond to that aspect of Request 33 that requires a subjective determination of whether or not George Comnas played a "major or significant role" in any particular transaction.

■ *Request 40.* This request seeks [c]ommunications to, from, or relating to George Comnas concerning Atlas, Samarco, William P. Tavoulareas, Peter W. Tavoulareas, Costos Lemos, C. M. Lemos & Co., Exxon, Standard Vacuum Oil Co., Todd Shipyards, Bethlehem Steel, Standard Oil of New Jersey, the Government of South Africa, Bank Shipyards, Japan Lines, Mr. Colocotronis, or Iatron Company, including but not limited to any correspondence, telephone conversations, or other communications of any sort between George Comnas, on the one hand, and Peter W. Tavoulareas, or any past or present employee, officer, or director of Mobil, on the other hand, including but not limited to telephone bills, expense reports pertaining to telephone calls, telephone logs, telephone messages, notes of conversations, desk diaries, or any other document evidencing the fact or subject matter of any such conversation or communications.

As an alternative to this request, Mobil proposes to produce "communications to, from, or relating to George Comnas concerning Atlas, Samarco, William P. Tavoulareas or Peter W. Tavoulareas." The Court is inclined to accept Mobil's narrower formulation of Request 40, with one minor exception. As stated by counsel for WPC, the focus of The Post's original request is on any information that pertains to the alleged unreliability of Mr. Comnas. This kind of information may be essential to The Post's defense against the claims filed by the Tavoulareases. Consequently, the Court will order Mobil to produce, in addition to the production Mobil has proposed, any communications concerning the unreliability of Mr. Comnas that are discovered during the course of its search of any files maintained on Atlas or Samarco. In seeking material concerning Comnas' unreliability, however, Mobil need not conduct an independent search of its files on the other entities specified in Request 40.

*Request 41.* This request seeks information pertaining to the use of Mobil corporate aircraft by William Tavoulareas and any of his relatives. This Court has previously ruled in another discovery dispute in this case that this information is potentially relevant to the question of plaintiffs' reputations "insofar as it might supply evidence of personal use of company assets." *Tavoulareas v. Piro,* 93 F.R.D. 11 (D.D.C. 1981) (memorandum & order). Consequently, the Court will order production of the documents sought in Request 41 as limited by the following instructions: Mobil shall produce a list of the times William Tavoulareas or any member of his family used Mobil corporate aircraft; documents reflecting any payments by William Tavoulareas to Mobil for any use of Mobil aircraft by himself or his family; and documents reflecting whether William Tavoulareas' or his family's use of Mobil aircraft was for personal or business purposes, including information regarding points of travel and the identities of other passengers on board at the time of the Tavoulareases' use.

*Requests 46, 47, 48, & 49.* All these requests have been resolved by The Post and Mobil. With regard to Requests 46, 47, and

48, Mobil will produce all responsive documents in its possession. With respect to Request 49, Mobil will respond by producing the certified financial statements of Samarco, provided that if *The Post* establishes that the financial statements are inadequate for its genuine needs, the provision of further financial records of Samarco may be ordered.

*Request 51.* This request seeks "any and all documents relating to"

[a]ny communication by or to any member, past or present, of the Board of Directors of Samarco in his capacity as a Board member which relates to Atlas or to Peter W. Tavoulareas, and all documents presented at or discussed at Samarco Board meetings which relate to any such communication.

Once again, Mobil objects on the grounds of overbreadth and relevance. Instead, Mobil proposes to supply *The Post* with the minutes of the meetings of the Board of Directors of Samarco relating to Atlas or Peter Tavoulareas.

As indicated at the hearing on this matter, the Court is of the opinion that *The Post* is entitled to somewhat more than the formal minutes of the pertinent Samarco Board meetings. Accordingly, Mobil also will be ordered to produce any communications from a Samarco Board member, in his capacity as a Board member, respecting Atlas or Peter W. Tavoulareas.

*Requests 52–60.* The dispute over these requests, contained in *The Post*'s supplemental subpoena, focused essentially on the scope of the search to be conducted by Mobil. This issue has been resolved earlier in this Memorandum. As discussed in Part I(C), Mobil need only search the files within the office of its Public Affairs Department and within the office of William Tavoulareas for information regarding William Tavoulareas' public figure status. In addition, Mobil is not ordered to conduct an independent search of its Public Affairs Department for materials dealing with Peter Tavoulareas, Samarco, or Atlas. Rather, Mobil will produce these materials only to the extent they are discovered during the course of other document searches conducted in that Department. Mobil will be ordered, however, to conduct a reasonable search of William Tavoulareas' office for any documents responsive to Requests 52–60, including those requests pertaining to Peter Tavoulareas, Atlas, and Samarco. Finally, the Court will order Mobil to respond fully to Request 60 on the ground that the request seeks information relevant to William Tavoulareas' public figure status. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974).

## CONCLUSION

In conclusion, the Court simply wishes to note its expectation that *The Post* and Mobil will comply not only with the substance of this memorandum, but also with its spirit. In that regard, the Court expresses the hope and expectation that these two parties will endeavor in the future to resolve any discovery disputes without the intervention of the court so that this litigation can proceed to trial and disposition as rapidly as possible.

## PROTECTIVE ORDER

Upon consideration of the motion of Mobil Corporation and Mobil Oil Corporation ("Mobil") for a protective order regarding the scope, timing, and confidentiality of discovery, the memoranda in support and opposition, and the arguments of counsel in open court, it is by the Court this 5th day of November, 1981,

ORDERED that the motion be, and hereby is, granted; and it is further

ORDERED that the following protective provisions be, and hereby are, imposed upon any discovery conducted by defendants in this action, whether this discovery is directed at a party to the litigation, at Mobil or any of its officers or directors, or at any other person:

1. Mobil shall have the right to designate as confidential any information or documents revealed or produced by it in connection with this action. In the event that Mobil does designate any information or

document as confidential, the information or document shall be made available only to the named individual defendants in this litigation, to the attorneys for the named defendants, and, if defendants' attorneys so specify in writing to counsel for Mobil, to designated secretaries, paralegals, investigators, and experts assisting defendants' attorneys in the preparation and trial of this case, and, again if defendants so specify in writing to counsel for Mobil, to potential witnesses interviewed by counsel for defendants. Any information or document designated as confidential shall not be made available to defendant *The Washington Post*, or to any officer, director, or employee of defendant, including in-house counsel, except as provided in this Protective Order.

2. Each person, other than the attorneys of record for the defendants, to whom designated confidential information or documents are made available shall, under oath or attestation, agree in writing to the following attestation, a copy of which shall forthwith be furnished to counsel for Mobil:

I hereby attest to my understanding that information or documents designated confidential are provided to me pursuant to the terms and conditions and restrictions of the Protective Order of November 5, 1981 in *Tavoulareas v. Piro & Tavoulareas v. Washington Post*, 93 F.R.D. 11, in the United States District Court for the District of Columbia; that I have been given a copy of and have read that Protective Order and have had its meaning and effect explained to me by the attorneys for defendants; and that I hereby agreed to be bound by it and its terms. I further agree that I shall not disclose to others, except in accordance with that Protective Order, such information or documents, including notes or other memoranda or writings regarding information contained in them, and that such information or documents shall be used only for the purposes of the legal proceeding in which they were produced. I further agree and attest to my understanding that my obligation to honor the confidentiality of such information or documents will continue even after the termination of that legal proceeding. I further agree and attest to my understanding that, in the event that I fail to abide by the terms of that Protective Order, I may be subject to sanctions, including sanctions by way of contempt of court, imposed by the Court, for such a failure.

3. Any depositions taken in this action in which any information or document designated confidential is or may be disclosed or utilized shall be attended only by the deponent, by counsel of record for the parties, by counsel or designated representatives of Mobil, and by persons described in paragraph 1, above, who have executed the attestation set forth in paragraph 2, above. All information disclosed in, and any transcripts made of, such depositions shall be treated in accordance with the confidential restrictions set forth in this Protective Order. The deponent, if a person other than an officer, director, or employee of Mobil, and each court or deposition reporter in attendance at such deposition shall, prior to the commencement of that deposition, execute an attestation in the form set forth in paragraph 2, above.

4. In order to protect the interest of Mobil in the confidentiality of documents and information that are or may become the subject of discovery in this proceeding, counsel for Mobil are authorized to attend depositions in this civil action.

5. All persons to whom any designated confidential information or document is disclosed or given shall maintain the confidentiality of that information or document, and any information contained in such document, subject to the terms of this Protective Order.

6. No summary or copy of any designated confidential information or document shall be made by any person, other than at the express direction of the attorney to whom disclosure was first made. Any such summary or copy shall be subject to the terms of this Protective Order to the same extent as the information or document from which such summary or copy is made.

7. Defendants' counsel shall ensure that all confidential materials, information, and documents covered by this Protective Order, together with any authorized summaries or copies, are returned to counsel for Mobil at the time the above-referenced civil action terminates.

8. In the event that any information, document, or material subject to the confidentiality restrictions of this Protective Order is utilized in pretrial depositions, briefs, or other documents filed with the Court, or is referred to in any hearing before the Court, such use shall be made under seal and bear the legend, "THIS DOCUMENT CONTAINS CONFIDENTIAL MATERIAL COVERED BY A PROTECTIVE ORDER OF THE COURT AND IS SUBMITTED UNDER SEAL PURSUANT TO THAT PROTECTIVE ORDER: THE CONTENTS OF THIS DOCUMENT MAY NOT BE DISCLOSED WITHOUT EXPRESS ORDER OF THE COURT," and/or be received by the Court *in camera* with the public excluded.

9. In the event that any counsel for the parties determines that any person other than those referred to in this Protective Order should be permitted to examine designated confidential material, documents, or information encompassed within this Protective Order, counsel shall confer with counsel for Mobil in an effort to resolve the matter. In the absence of agreement, counsel may apply to the Court for the person in issue to examine the confidential material, documents, or information, which application shall state with specificity the reasons justifying this examination.

10. In order to minimize the amount of materials and documents dealt with in accordance with the preceding paragraph 8, the parties are admonished, when possible, to submit any information that is covered by this Protective Order separately from the text of any deposition, brief, or other document filed or used in this civil action.

11. Maintenance of the confidential status of any information, document, or material shall in all cases be subject to further order of the Court and nothing in this Pro-

tective Order shall preclude any party from applying to the Court for modification of the terms of this Order as may be appropriate, *provided*, however, that prior to any application the parties shall confer and make a good faith effort to resolve the matter by agreement.

12. The use of any information, document, or material encompassed within and protected by the terms of this Protective Order shall be restricted to this proceeding and shall not be used by defendants or any other person (other than Mobil) described in paragraphs 1, 3 and 9, above, for any other purpose whatsoever, *provided*, however, that this Protective Order shall apply only to information, documents, or material produced pursuant to discovery conducted in this civil action. This Protective Order, therefore, shall not apply to information, documents, or material that is obtained by reporters for *The Washington Post* through channels or means other than through discovery conducted in this civil action.