**William P. TAVOULAREAS, et al., Plaintiffs,**

**v.**

**The WASHINGTON POST COMPANY, et al., Defendants.**

**William P. TAVOULAREAS, et al., Plaintiffs,**

**v.**

**Philip PIRO, Defendant.**

**Civ. A. Nos. 80–3032, 80–2387.**

United States District Court, District of Columbia.

Aug. 11, 1986.

David Kendall, Kevin T. Baine, Scott M. Matheson, Jr., Washington, D.C., for Washington Post.

Anthony C. Epstein, Jack Landau, Robert S. Becker, Bruce G. Joseph, Washington, D.C., for Reporters Committee for Freedom of the Press.

Judah Best, Loren Kieve, Washington, D.C., for Mobil Corp.

## MEMORANDUM

GASCH, District Judge.

This action is before the Court on remand from the Court of Appeals to consider the motion of the Washington Post Company ("the Post") and intervenor Reporters Committee for Freedom of the Press to unseal some 3,800 pages of deposition transcripts and some 425 accompanying exhibits. *See Tavoulareas v. The Washington Post Co.*, 737 F.2d 1170, 1173 (D.C.Cir. 1984) (en banc). For the reasons stated below, the Court finds that good cause exists to retain the seal on most of the discovery materials.

## I. BACKGROUND

The sealed discovery materials were obtained by the Post as defendant in a libel action brought by Peter Tavoulareas and his father, William Tavoulareas, president of Mobil Corporation ("Mobil"). All the depositions and exhibits (hereinafter "Mobil discovery materials") concern Mobil, which initially was not a party to this litigation. Only a few of these items were used at trial, though much of the information contained in them was covered in trial testimony.

This motion has a long and complicated history. On November 5, 1981, in response to the Post's motion to compel discovery and Mobil's motion for a protective order pursuant to Fed.R.Civ.P. 26(c), this Court issued a blanket protective order sealing all discovery provided by Mobil and its employees. *Tavoulareas, et al. v. Piro*, 93 F.R.D. 24 (D.D.C.1981). As explained by the Court at that time,

> the Court is convinced that the protective order proposed by Mobil constitutes the best means of resolving the conflict between the legitimate need of [the Post] for prompt, thorough disclosure and the genuine interest of Mobil in preserving the confidentiality of sensitive corporate documents.

*Id.* at 29.

The Court, relying on a statement submitted by Walter E. MacDonald, a vice president of Mobil, found that Mobil made a *prima facie* showing that the discovery requested encompassed sensitive information concerning Mobil's dealings in Saudi Arabia and the marine transport business, and that public disclosure could cause Mobil competitive harm. *Id.* However, in order to minimize the role of the Court in passing on the need for confidentiality of each and every deposition and exhibit, the Court issued a blanket order and advised the parties to proceed as follows: Mobil was to use its best efforts to invoke the terms of the protective order only when necessary to protect legitimately confidential matter, *id.*, n. 2; the Post could challenge the need for protection of particular

documents when it wished, *id.*, at 30 n. 4; and Mobil had the burden of establishing good cause for retaining protection for documents so challenged. *Id.*[1]

Following the close of trial, the Post and intervenors moved to unseal all depositions and pretrial pleadings, including the Mobil discovery materials. The Court granted this motion, unsealing, in effect, almost the entire record herein. *Tavoulareas v. The Washington Post Co.*, Order and Memorandum (D.D.C. June 21, 1983) (hereinafter "June 21 Memorandum"). Relying on this Circuit's holding in *In re Halkin*, 598 F.2d 176, 187 (D.C.Cir.1979), the Court found that the first amendment required this Court to impose a heavy burden on Mobil to justify retaining the seal. June 21 Memorandum at 3. The Court concluded Mobil had not met this burden. *Id.* at 4–6.

Mobil appealed that portion of the June 21 Order unsealing the depositions and exhibits not used at trial, and an appeals court panel reversed this Court. *Tavoulareas v. The Washington Post Co.*, 724 F.2d 1010, 1015 (D.C.Cir.1984). On March 15, 1984, the entire Court of Appeals vacated the panel's judgment and granted the Post's request for a rehearing *en banc*. Before the hearing could be held, however, the Supreme Court decided *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), which overruled *In re Halkin*. *Id.* at 32 & n. 18, 104 S.Ct. at 2207 & n. 18. In *Seattle Times*, the Supreme Court held that when a protective order is entered on a showing of good cause under Rule 26(c), and that order is limited to the context of pretrial discovery and does not restrict dissemination of information gained from other sources, it does not offend the first amendment. *Id.* at 37, 104 S.Ct. at 2209.

On the basis of *Seattle Times*, the Court of Appeals issued a *per curiam* order on June 25, 1984, remanding the matter to this Court for such further action as may be appropriate, including the reconsideration of the justification, "if any, for maintenance of a protective order in light of what the Supreme Court has said about *In re Halkin* and in light of the good cause requirement of Rule 26(c)." *Tavoulareas, supra*, 737 F.2d at 1172. The Appeals Court added that, to the extent that this Court relied on *In re Halkin*, its June 21 Memorandum was at odds with *Seattle Times*. *Id.* Thus the only issue now before this Court is whether, in its discretion, good cause exists to retain the Mobil discovery materials under seal. *Id.* at 1173.

The Post, Mobil and intervenors filed supplemental memoranda addressing this question, and the Court held oral arguments on January 31, 1985. At that time, the Court directed attorneys for Mobil to review the discovery materials and to submit a statement of Mobil's reasons for wishing to retain the seal. The other parties were given an opportunity to reply to Mobil's submission in writing. Upon consideration of these submissions and the entire record herein, the Court will deny the motion to unseal the Mobil discovery materials.

## II. THE KIEVE STATEMENT

At the direction of the Court, an attorney for Mobil reviewed all the sealed material, held discussions with officers of Mobil, and concluded that "the same considerations that led Mobil to apply for [ ] a protective order are still present." Statement of Loren Kieve, April 12, 1985 ¶ 3(a) ("Kieve Statement"). Specifically, Mobil officers advised Kieve that Mobil still procures oil from Saudi Arabia, that it still is engaged

---

**1.** In addition to the November 5, 1981 order, the Court issued two other pretrial orders addressing Mobil's quest for confidentiality. On December 15, 1982, the Court extended the protective order to confidential Mobil documents in the possession of Peter Tavoulareas or entities in which he had an interest. On July 7, 1982, the Court granted Mobil's motion to modify the prior orders to permit the parties full use of

confidential Mobil documents for all trial purposes, but continued in effect the prohibitions on the disclosure of the documents themselves. Thus the documents could be introduced into evidence and read aloud in open court but could not be publicly distributed or viewed. These documents were later released pursuant to portions of this Court's June 21, 1983 order not challenged here.

in the highly competitive international marine transport business, and that it still conducts a number of joint ventures with Saudi Arabian partners, including the government of that kingdom. *Id.* at ¶ 3(b). These joint venturers have been promised and continue to expect confidentiality. *Id.* ¶ 3(c). Thus, Kieve concluded, "I have reviewed the confidentially-designated depositions and exhibits thereto, and have determined, applying the considerations outlined above, that the majority of these materials are confidential and should remain so." *Id.* at ¶ 4.[2]

Mr. Kieve reviewed the deposition transcripts and exhibits attached thereto, and page-by-page, supplied one-to-four grounds for maintaining them under seal.[3] These were that the material (1) disclosed confidential proprietary information relating to Mobil's competitive business of obtaining crude oil from Saudi Arabia; (2) disclosed confidential proprietary information concerning Mobil's competitive marine transport business; (3) disclosed confidential proprietary information about Mobil's transactions with the government of Saudi Arabia and other Saudi entities; or (4) disclosed confidential internal Mobil reviews, actions, analyses or deliberations.[4] *Id.*, Mobil Exh. 2. Mr. Kieve states that release of this information, even though dealing with past events, would impair Mobil's ongoing business relationships because Mobil's Saudi partners put a high premium on confidentiality. Kieve Statement at ¶ 3(c).

## III. CONTENTIONS OF THE PARTIES

The parties disagree as to the proper legal standard to be applied by the Court at this juncture. Citing *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979), Mobil contends that "absent a showing of . . . some extraordinary need," Mobil is entitled to rely on the blanket protective order issued in 1981. Thus Mobil would require the Post to demonstrate "exceptional" circumstances to justify lifting the seal. *American Tel. & Tel. v. Grady*, 594 F.2d 594, 597 (7th Cir.1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). Furthermore, Mobil argues, the Post would place on Mobil an expensive and oppressive burden of justifying the protection of each and every page and exhibit under seal. This would be contrary to the underlying purpose of Rule 26(c), which includes among its express purposes the protection of a "party or person from annoyance, embarrassment, oppression or undue burden or expense." *Seattle Times, supra*, 467 U.S. at 35 n. 21, 104 S.Ct. at 2208 n. 21. Furthermore, the Court would then be in the unwelcome position of having to pass on each and every justification, a task which it already declined to undertake. *Tavoulareas, supra*, 93 F.R.D. at 29–30.

Finally, Mobil argues that it cooperated with the Post's massive discovery requests on the express condition that the material would be used, if at all, for the purposes of

**2.** The Post asserts that no knowledgeable Mobil officer has ever read the documents or made a reasoned decision as to the present need for confidentiality. Def's Opp. to Statement of Loren Kieve at 14 (May 22, 1985) (hereinafter "Post Opp."). This contention is unfounded. The Court directed Mobil's *attorneys* to undertake a review of the discovery materials. In so doing, Mr. Kieve states he discussed the documents with Mobil officials. Kieve Statement at ¶ 3(a). Because the depositions at issue are almost all given by Mobil officials, one presumes they are familiar with the contents of their own statements.

**3.** The Post chides Mobil for not "deign[ing] to address the sealed deposition exhibits...." Post Opp. at 13. This is not correct. The exhibits were reviewed by Mr. Kieve, who states that

he chose not to provide grounds for confidentiality for them apart from the grounds for maintaining the seal on the deposition pages to which the exhibits are attached. Kieve Statement at ¶ 7. Neither did he undertake the cumbersome task of correlating deposition exhibits with those used at trial, due to the length of the month-long trial record. *Id.* Exh. 2, n. 1.

**4.** The Kieve Statement did identify roughly 1,000 pages for which there was no current need to maintain confidentiality. However, Mobil advanced other reasons, discussed *infra*, for maintaining even these pages under protective order. Kieve Statement at ¶ 4. Kieve also identified numerous pages from depositions containing colloquys between attorneys, for which there was no need to maintain secrecy. *Id.* at ¶ 5 and Mobil Exh. 1.

litigation, and that it would be returned to Mobil at the close of trial. *Tavoulareas, supra,* 93 F.R.D. at 35, ¶¶ 7, 12.

> If Mobil's rights are not preserved here, not only Mobil but other litigants will think long and hard before agreeing to subject themselves to the 'massive discovery' demands of the kind imposed in this case. [ ] The result will be an 'increase in attempts to persuade courts to deny discovery altogether' and pitched battles over discovery issues because of the risk that private discovery information will be used for some other purpose than litigation.

Mobil's Reply to Post Opp. at 8 (June 6, 1985) (hereinafter "Mobil Reply"), *citing* Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L.Rev. 1, 20–27 (1983).

The Post, however, insists the Court must make a determination of whether good cause existed under Rule 26(c) to seal the discovery materials initially, and as in all initial determinations of good cause, the burden is on the party seeking a protective order to demonstrate the need for secrecy. Fed.R.Civ.P. 26(c); *Tavoulareas, supra,* 93 F.R.D. at 29 n. 3; 4 *Moore's Federal Practice* ¶ 26.68 at 26–426 (1984). The Post argues that good cause may not be shown from general or conclusory assertions, but must be demonstrated with particularity, and that Mobil must establish that disclosure would do substantial injury to its business. *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981), *citing United States v. IBM Corp.,* 67 F.R.D. 40, 46 (S.D. N.Y.1975).

According to the Post, Mobil has not met this burden. The Post would dismiss Mobil's page-by-page classification of the depositions (*see* Mobil Exh. 2, discussed *supra,* Part II) because Mobil did not separate out and identify which, if any, of the deposition materials legitimately remain confidential.

"The vast majority of the materials are already in the public domain ... and there is simply no present justification for sealing the small remaining portion, since these exhibits and deposition transcript pages deal with commercial events a decade old." Post Opp. at 16. Furthermore, the Post argues, there is no basis under Rule 26(c) for sealing those portions of the transcripts dealing with Mobil's corporate mismanagement, conflicts of interest and other internal affairs. *See Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir.1983); *Joy v. North,* 692 F.2d 880, 894 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).

The Post provides the Court with lengthy lists of cites to the trial transcript which it says correspond to information contained in depositions that Mobil wishes to protect, arguing that Mobil can have no legitimate proprietary interest in the subject matter of depositions when that subject matter has been revealed in some other forum.[5] *See Seattle Times, supra,* 467 U.S. at 37, 104 S.Ct. at 2209–10; *National Polymer Products v. Borg Warner Corp.,* 641 F.2d 418, 421 (6th Cir.1981); *Underwater Storage, Inc. v. United States Rubber Co.,* 371 F.2d 950, 954 (D.C.Cir.1966), *cert. denied,* 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967).

## IV. DISCUSSION

Rule 26(c) states in pertinent part that a court may fashion any protective order

> which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: [ ] (2) that discovery may be had only on specified terms and conditions ...; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other

---

5. The Post argues that in light of its analysis of the trial record, and its finding that most of the topics of the sealed depositions have been "fully aired" at trial or in other public documents, it is "simply incredible" for Mobil to assert that most of the discovery material was never used at

trial. Post Opp. at 30. The Post overstates Mobil's point, however, which is simply that the majority of the actual deposition transcripts and exhibits themselves were not used at trial. *Tavoulareas, supra,* 724 F.2d at 1011 n. 1.

confidential research, development, or commercial information not be disclosed....

The rules permitting discovery "often allow extensive intrusion into the affairs of both litigants and third parties." *Seattle Times, supra,* 467 U.S. at 30, 104 S.Ct. at 2206.

> Liberal discovery is provided for the *sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.* Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery may seriously implicate privacy interests of litigants and third parties.

*Id.* at 34, 104 S.Ct. at 2208 (emphasis added; footnotes omitted).

Thus, in *Seattle Times,* the Supreme Court found that the only purpose of discovery is to aid the parties in preparing for litigation, and that Rule 26(c) is a tool used by courts to prevent abuse of that process. To this end, the Court recognized, judges must have broad discretion in overseeing the conduct of discovery:

> The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.* at 36, 104 S.Ct. at 2209 (footnote omitted).

█ The Court agrees with the Post that the mandate from the Court of Appeals requires it to make a present determination of good cause, and that the burden remains on Mobil to demonstrate the existence thereof. However, the Post would have this Court make that determination in a vacuum, as if the past five years of litigation had never taken place. This the Court cannot do, as the mandate requires it to assess whether there is good cause "for the *continued maintenance*" of the protective order. *Tavoulareas, supra,* 737 F.2d at 1173 (emphasis added). Furthermore, the Supreme Court stated that district courts assessing the existence of good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978). Therefore, the Court must take into account the fact that discovery was obtained in this case under the terms of the November 5, 1981 order.

That order served the ends of Rule 26 as identified in *Seattle Times:* the order facilitated trial preparation while preventing abuse of the discovery process. The Post benefitted from the arrangement in that it was permitted to conduct efficient, thorough and far-reaching discovery against Mobil, *see In re Reporters Committee for Freedom of the Press,* 773 F.2d 1325, 1341 (D.C.Cir.1985); Mobil benefitted in that it was permitted to prevent disclosure of sensitive information unless and until it was needed for trial; and the Court and the parties benefitted in that they all avoided the "annoyance, ... oppression, ... undue burden or expense" that surely would have resulted from protracted discovery disputes in this litigation.[6]

The Court must consider the fact that Mobil's cooperation in this process was obtained in reliance upon the blanket protec-

---

**6.** Furthermore, while the 1981 order requested Mobil not to use the protective order indiscriminately, *Tavoulareas, supra,* 93 F.R.D. at 29, n. 2, it also advised the Post to seek the release of "particular documents." *Id.* at 30 n. 4. Despite these admonitions, both parties took a broadbrush approach to the terms of the order: Mobil sought to protect all exhibits and depositions filed, and the Post now seeks release of all of those materials. *Cf. Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., et al.,* 529 F.Supp. 866, 893 (D.Pa.1981) (party may not stand by while mountain of discovery materials grows and later attempt wholesale declassification).

tive order, which included a requirement that the information be used only in preparation for litigation. *See Tavoulareas, supra,* 93 F.R.D. at 35 ¶ 12. This Court is not alone in recognizing that a party's reliance on a protective order is a significant factor in determining whether to lift a seal on discovery materials. *See United States v. Davis, et al.,* 702 F.2d 418, 422 (2d Cir.), *cert. denied sub nom. Veliotis v. United States,* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983) (seal lifted because party had not given deposition in reliance on court's protective order); *Martindell, supra,* 594 F.2d at 295 (seal maintained where deponent had relied on seal); *In re Franklin National Bank Securities Litigation,* 92 F.R.D. 468, 472 (E.D.N.Y.1981), *aff'd sub nom. FDIC v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982) (seal maintained where parties had relied on seal to induce settlement).

■ Furthermore, the Court must construe Rule 26(c) so as "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1; *Wilk v. American Medical Assn.,* 635 F.2d 1295, 1299 (7th Cir.1980). If the Court were to adhere to the rigorous standard urged by the Post, and force Mobil to demonstrate the likelihood of serious injury for each and every page and exhibit, the Court would be required to undertake that which it has already stated it had no intention of undertaking: a time-consuming review of the 3,800 pages and 425 exhibits. Where, as here, the defendant Post obtained the full benefit of the discovery materials for trial preparation, and the material is no longer needed for trial,[7] such an undertaking

would be a waste of the parties' and the Court's resources. *Zenith Radio, supra,* 529 F.Supp. at 894. *Cf. Seattle Times, supra,* 467 U.S. at 34, 104 S.Ct. at 2208 (liberal discovery permitted solely for trial preparation); *Crystal Grower's Corp. v. Dobbins, et al.,* 616 F.2d 458, 461–62 (10th Cir.1980) (seal retained where disclosure would serve no public purpose). Thus, Mobil's burden of demonstrating good cause is tempered by its reliance on the protective order and the fact that it gave the Post access to massive discovery. This is so even though the protective order may originally have been entered before, or even without, a finding of good cause, as in the case where it is entered pursuant to agreement of the parties.[8] *Grady, supra,* 594 F.2d at 597; *Martindell, supra,* 594 F.2d at 292; *Franklin National Bank, supra,* 92 F.R.D. at 472.

■ In light of the foregoing, the Court finds the Kieve Statement satisfies Mobil's burden of demonstrating good cause. As this Court stated in its June 21 Memorandum, *supra,* at 3–4, the protective order entered in 1981 constituted a judicial determination that Mobil made a *prima facie* showing that its business would be harmed by release of the information contained in the materials. *Reporters Committee, supra,* 773 F.2d at 1339. The Kieve Statement, Exh. 2, demonstrates the reasons why Mobil currently believes disclosure would be harmful. While these statements may not meet the standard of particularity required where a court is considering whether to enter a protective order initially, *see, e.g., United States v. Exxon, supra,* 94 F.R.D. at 251, they are sufficient to

---

**7.** The merits of this case are still on appeal. Should a new trial be necessary, the Court has ordered Mobil to retain the sealed discovery materials in a separate and safe place, organized as they were upon receipt.

**8.** The protective order entered on November 5, 1981 did not constitute a judicial determination that Mobil had made a sufficient showing to justify indefinite confidential treatment, but rather found that Mobil had made a *prima facie* showing of business harm. June 21 Memorandum at 3–4. In its June 21, 1983 order, the Court found that Mobil's generalized assertion

of confidentiality at that time did not satisfy the "heavy burden" imposed on Mobil, but this burden was dictated by the first amendment concerns identified in the now-overruled *In re Halkin. Id.* Since that order, Mobil has submitted the Kieve Statement providing a more detailed review of the depositions at issue and the justifications for keeping them secret. Thus none of the Court's prior orders are determinative of whether good cause presently exists for maintaining the Mobil discovery materials under seal.

support maintaining a blanket protective order that has been in place for five years. *Zenith Radio, supra,* 529 F.Supp. at 892.

■ In assessing the interest of both the Post and the Reporters Committee in these documents, it is additionally significant that these materials are no longer needed for trial, that the overwhelming majority of the actual transcript pages and exhibits themselves were never used at trial, *see, supra,* n. 6, and that discovery materials relied upon at trial or in pretrial motions are no longer under seal. *See* those portions of the June 21 Order not challenged on appeal; *Reporters Committee, supra,* 773 F.2d at 1327 n. 1. The Federal Rules create a statutory presumption in favor of open discovery, *Wilk, supra,* 635 F.2d at 1299 & n. 7; *Grady, supra,* 594 F.2d at 596. This presumption serves the public interest of assuring the integrity of the judicial process. *United States v. Hubbard,* 650 F.2d 293, 315 (D.C.Cir.1980); *Wilk, supra,* 635 F.2d at 1299. This purpose is not served, however, by the disclosure of materials obtained through pretrial processes and not relied upon by the Court. *Cf. Seattle Times, supra,* 467 U.S. at 33, 104 S.Ct. at 2208; *Crystal Grower's, supra,* 616 F.2d at 462.

Additionally, given the present posture of the case, both Mobil and the Post may be compared to third parties seeking respectively to protect or obtain sealed materials. Mobil was permitted to intervene in this case on December 15, 1981, but solely for the purpose of protecting its proprietary interest in the discovered information. Since trial is over, and the Post desires to obtain release of these materials for purposes other than preparation for litigation, it may be compared to a third party, such as the Reporters Committee, which intervened solely to obtain access to the documents. In such a case, the Court may weigh Mobil's interest in privacy against the public's generalized interest in open judicial processes, *Hubbard, supra,* 650 F.2d at 319; *In re Coord. Pretrial Proceedings In Petroleum Products Antitrust Litigation,* 101 F.R.D. 34, 43 (D.Cal.

1984), and conclude that Mobil's interest in maintaining protection outweighs the Post's need for the documents.

The argument of the Reporters Committee that it should have access to discovered material not relied upon by the Court is similarly unavailing. "Pretrial depositions and interrogatories are not public components of a civil trial.... Restraints placed on discovered, but not [ ] admitted, information are not a restriction on a traditionally public source of information." *Seattle Times, supra,* 467 U.S. at 33, 104 S.Ct. at 2207–08. The Court has weighed the public's interest in these materials, as represented by the Reporters Committee, against the judicial system's and the public's interest in encouraging reliance on protective orders to speed the resolution and reduce the expense of litigation, and finds the latter more compelling. *See In re Franklin National Bank, supra,* 92 F.R.D. at 472. *Cf. Reporters Committee, supra,* 773 F.2d at 1338 (there is no first amendment right of public access to all documents placed on the Court's record but not admitted).

Of course, the Court's order herein does not prevent the dissemination of those depositions and deposition exhibits included in the trial record or unsealed pursuant to unchallenged portions of this Court's previous orders. Nor could it prevent the Post, the Reporters Committee, or anyone else from disseminating the substance of information already in the public domain, by virtue of its inclusion in the open trial record or other sources. A "party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Seattle Times, supra,* 467 U.S. at 34, 104 S.Ct. at 2208. Thus, if, as the Post contends, the great bulk of the deposition exhibits and transcripts were in fact introduced at trial, or they or their contents were revealed elsewhere, the Post already has access to and may disseminate those items or that

information.[9] This is all the more reason why it is unnecessary for the Court to undertake a wasteful and time-consuming review of all the documents at issue here.

■ The Post further objects that, by virtue of the age of this litigation, much of the sealed information is "stale" and may therefore not be eligible for protection under Rule 26(c). *Zenith Radio, supra,* 529 F.Supp. at 891, and cases cited therein. Mobil counters that revelation of even non-current information would impair its relations with its Saudi partners, who put a premium on Mobil's ability to maintain confidentiality. Furthermore, "it is terribly difficult to establish, on any principled basis, temporal boundaries governing the protection to be accorded information." *Id.* Most significantly, while the Post's point may be a valid objection to the sealing of discovery at the initial stage of litigation, it cannot be persuasive after a protective order has been in place for several years. If the Court were to accept the Post's premise, all protective orders would be subject to successful challenge upon the passage of time. This in turn would discourage parties from agreeing to a blanket protective order of the kind used in this case, from which both Mobil and the Post benefitted.

■ The Court also disagrees with the Post's argument that Mobil's fourth class of information, concerning internal operations of Mobil, may not properly be subject to a seal under Rule 26(c). Again, that material was provided in reliance on the terms of the 1981 order. To the extent it was not used at trial, and is not now sought for use in litigation, the Court determines that the present interest of the Post and the Reporters Committee in this information is outweighed by Mobil's interest in privacy.[10] *Cf. United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.), *cert. denied sub nom. Hopkinson v. United States,* ── U.S. ──, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985); *Hubbard, supra,* 650 F.2d at 319.

## V. CONCLUSION

■ Rule 26(c) permits the Court to attach to discovery any terms or conditions that justice requires, not only to protect trade secrets, but to prevent undue annoyance, embarrassment, burden or expense. "Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times, supra,* 467 U.S. at 35 n. 21, 104 S.Ct. at 2208 n. 21. Thus, although the burden is on Mobil to demonstrate that good cause exists for the continued maintenance of the protective order, its burden is not limited to a showing that the material encompasses trade secrets under Rule 26(c)(7). Furthermore, in assessing whether that burden has been met, the Court must consider the fact that discovery was obtained through Mobil's reliance on the 1981 protective order. In light of the present posture of this case, the Court finds Mobil has sufficiently demonstrated that revelation of much of the discovery materials would needlessly impair its business operations. The Court further finds that an expensive and time-consuming page-by-page review of the materials would be wasteful of the Court's and the parties' resources, in contravention

---

9. The Post contends that because so much of the substance contained in the Mobil discovery materials is on the public record, Mobil can have no legitimate interest in keeping the materials secret. *See supra,* Part III; *Underwater Storage, supra,* 371 F.2d at 954. While this factor may be significant in determining whether to enter a protective order initially, it may be outweighed by other interests where the issue is whether to maintain an existing protective order. *See, e.g., Nixon, supra,* 435 U.S. at 603, 98 S.Ct. at 1314–15 (upholding protective order sealing access to

audio tapes even though transcripts from those tapes were part of the public record).

10. The two cases cited by the Post, *Brown & Williamson, supra,* 710 F.2d at 1179, and *Joy, supra,* 692 F.2d at 894, are inapposite. In *Joy, id.,* the internal information sought by the parties was the basis for the adjudication. In *Brown & Williamson,* a third party sought access to records compiled by a public agency, and the court's decision to unseal the records was prompted by the public's special interest in such records. 710 F.2d at 1180.

of Rules 1 and 26(c). This is especially so where, as here, the documents to be retained under seal are no longer needed to prepare for litigation, and were not relied upon by the Court.

In light of the Supreme Court's teaching that the trial court must use its authority under Rule 26(c) to oversee and prevent abuse of the discovery process, *Seattle Times, supra,* 467 U.S. at 34–35, 104 S.Ct. at 2208–09, the Court will deny in large part the Post's motion to unseal the depositions and deposition exhibits. An appropriate order will be entered herein, retaining the seal but limiting it to those deposition transcripts and exhibits not used at trial or forming the basis for substantive pretrial motions. Exceptions will also be made for pages containing colloquys of counsel. This result, of course, does not prevent the Post, the Reporters Committee, or anyone else from disseminating information or documents already made public through trial or other sources, even if it duplicates material under seal.[11]

### ORDER

At the direction of the United States Court of Appeals for the District of Columbia in the case of *Tavoulareas v. The Washington Post Co.,* 737 F.2d 1170 (1984), and upon reconsideration of the motions of defendant Washington Post and intervenor Reporters Committee for Freedom of the Press to unseal the Court records in the above-captioned cases, intervenor Mobil Corporation's opposition thereto, further submissions by the parties, oral argument in open Court, and for the reasons stated in the accompanying Memorandum, it is by the Court this 4th day of August, 1986,

ORDERED that the Court's Order of June 21, 1983, be, and hereby is, vacated, and the following Order substituted in lieu thereof:

It is hereby

ORDERED that defendant's motion to unseal all trial records and pretrial materials be, and hereby is, granted; and it is, therefore, further

ORDERED that all restrictions of confidentiality be, and hereby are, removed from all trial exhibits in this case, including, specifically, trial exhibits U–1, X–3, V–5 and E–7; and it is further

ORDERED that all restrictions of confidentiality be, and hereby are, removed from all pretrial pleadings in this case including, specifically: (1) Confidential deposition and document appendices to plaintiffs' June 1, 1982 Opposition to Motion for Summary Judgment and Cross-motion; (2) Exhibits under seal to plaintiffs' June 23, 1982 Reply in Support of Cross-Motion for Summary Judgment; and (3) Exhibits 4 and 6 to defendants' Reply Memorandum in Support of their Motion for Summary Judgment; and it is further

ORDERED that all restrictions of confidentiality be, and hereby are, retained on all depositions and deposition exhibits filed under seal in these cases with the following exceptions: (1) Those portions of sealed deposition transcripts identified by the parties as containing colloquy of counsel, as designated in Mobil Exh. 1 attached to the Statement of Loren Kieve, April 12, 1985, and attachments I–XIX, Memorandum of Defendant the Washington Post Company in Opposition to the Statement of Loren Kieve, May 22, 1985; (2) any deposition or deposition exhibit released from seal by previous order of this Court; (3) any deposition or deposition exhibit released pursuant to paragraphs 1–3 of this order; and it is further

ORDERED that Mobil's motion for the return of its confidential documents be, and hereby is, granted and that, as required in

---

11. There is a dispute between the parties as to what actual transcript pages or deposition exhibits were used at trial. *Compare* Post Opp. at 17–18; Mobil Reply at 14 n. 9. The Court is not going to undertake the cumbersome task of correlating the deposition transcripts and exhibits under seal to those used in trial. The Court's order, however, will maintain the seal only as to those exhibits and depositions *not* used at trial. The Court's protective order will similarly *not* extend to those transcript pages identified by the parties as containing colloquys between attorneys. *See* Kieve Statement, Mobil Exh. 1.

Paragraph 7 of this Court's November 5, 1981 protective order, defendants' counsel return to counsel for Mobil, within thirty (30) days of the date of this order, all confidential materials, information and documents still covered by the Court's protective orders in this case, together with any authorized summaries or copies, provided that counsel for Mobil bear the responsibility for assuring that these documents are maintained in the same organizational framework that they are in at the time defendants return them to Mobil until such time as all appeals in this case are exhausted. If subsequent appeals result in the need for the defendants to gain access to these documents again, Mobil will be required to promptly return them to defendants.