**EMPIRE OF CAROLINA, INC., Plaintiff,**

v.

**Frank E. MACKLE, Jr., Frank E. Mackle, III, Neil E. Bahr, Thomas B. McNeill, Edgar M. Moore, William N. O'Dowd, Jr., Conrad S. Young, Topeka Group, Incorporated and the Deltona Corporation, Defendants.**

No. 85–3254–CIV–MARCUS.

United States District Court,
S.D. Florida.

Oct. 19, 1985.

See also 108 F.R.D. 319.

OMNIBUS ORDER

MARCUS, District Judge.

THIS CAUSE came before the Court upon the Emergency Motion of Plaintiff,

Empire of Carolina, Inc., to Compel Production of Documents from Defendant Topeka Group, Inc., filed with this Court on October 15, 1985. This Court heard argument upon Plaintiff's Motion on October 16th at 5:30 p.m. and again on October 18th at 5:00 p.m.

During the October 18th hearing, which had been set by the Court primarily to address a Joint Motion by Deltona and the Deltona Directors for a Temporary Restraining Order to restrain Plaintiff Empire from proceding with an action it had filed in Delaware Chancery Court against Deltona and its Directors, counsel also argued Plaintiff's Emergency Motion to Amend Order Compelling Plaintiff to Produce Materials, which Motion was filed with this Court on the same date. Upon the argument of counsel, review of the record and this Court being fully advised in the premises, it is hereby ORDERED that both of Plaintiff's Motions are DENIED for the following reasons:

I. *Plaintiff's Motion to Compel the Production of Documents from Defendant Topeka Group.*

For a brief review of this shareholder's derivative action and the proceedings to date, reference is made to this Court's Order Compelling Plaintiff to Produce Documents dated October 18, 1985.

On October 8, 1985 during a hearing of this matter and upon agreement of all the parties, this Court granted Plaintiff's Motion for Expedited Discovery and set this matter down for a Preliminary Injunction hearing on November 1, 1985. On October 5th Plaintiff served Defendant Topeka Group ("Topeka") Plaintiff's First Request for Production of Documents. Topeka filed its Response and Objections to the request on October 14th. Numerous documents have been produced. Additionally, Topeka filed with this Court a list of documents withheld from discovery. That list has been twice amended, on October 15th and again on the 18th. By its most recent amendment, Topeka has agreed to produce several documents (items 31 through 38)

which, therefore, need not be addressed by this Order.

Topeka most strenuously objects to the production of what it terms confidential financial strategy information. According to Topeka's Memorandum, over one year ago Topeka expressed interest in making a sizable investment in Deltona Corporation. Several months later, Topeka commissioned the nationally-recognized accounting firms of Price Waterhouse and Raymond James & Associates, Inc.—the latter an expert in municipal and allied areas—to determine whether an investment of the magnitude contemplated by Topeka was financially justifiable. Their preparation of reports and studies took over two months, and according to the affidavit of Jack R. McDonald, General Manager of the Topeka Group, cost Topeka nearly $200,000. Management personnel of Topeka and certain of its wholly owned subsidiaries discussed, on an internal, confidential and continuing basis, these reports and their ramifications for the possible investment in Deltona. Some of these discussions were memorialized in internal correspondence and memoranda.

Topeka urges that its commissioned studies and internal correspondence contain strategic thinking about Deltona and is of an extraordinarily sensitive business nature. It argues that these materials are especially sensitive and confidential at this point in time while Deltona and Topeka continue to negotiate Topeka's purchase of Deltona stock. In his affidavit dated October 16th, Jack R. McDonald stated that the transaction set forth in the letter of intent of September 9, 1985—the outline of the proposed transaction which Plaintiff seeks to halt—will not be consumated by Topeka. Deltona and Topeka are currently engaged in negotiations which, according to McDonald, may or may not lead to a new letter of intent. In short, an investment by Topeka in Deltona stock is still being negotiated by the companies at arm's length. The position taken by Topeka in those negotiations is founded upon the analyses

and conclusions contained in the requested documents.

Moreover, Topeka contends that financial strategy information created by and known only to Topeka is not relevant to the central issue raised by Empire's Complaint, to wit, the reasonableness of Deltona's board in determining whether to finalize the proposed transaction with Topeka. Rather, Topeka contends that Empire seeks to discover the documents so that it might use the information contained therein to further its attempt to control Deltona through solicitation of stockholder consents.

By contrast, Plaintiff argues that documents which relate to an analysis and evaluation of the proposed transaction between Topeka and Deltona are discoverable as they will establish the value which Topeka itself places on Deltona shares. Furthermore, it contends that the documents are neither a "trade secret" nor the kind of "confidential material" falling within the meaning of Fed.R.Civ.P. Rule 26(c)(7).

This Court finds that the relevance of Topeka's financial strategy information is at best indirect and circumstantial. At the outset we note that none of the requested materials have been shared in any way with the Defendant Deltona nor with its Board of Directors. Many of the disputed documents analyze the projected impact of Topeka's investment upon Topeka's own financial health. For example, some materials analyze how the investment would effect Topeka's parent company, Minnesota Power. (e.g., Item # 5). Others analyze the tax consequences for Topeka and its parent, and how that might vary if the deal were to be structured differently. (Item # 22) Materials, such as these, which analyze the impact of the proposed investment on Topeka and its affiliated companies have no real bearing upon the valuation of Deltona, nor upon whether its directors may have breached their fiduciary duties.

By contrast, some of the withheld documents do have some bearing upon the valuation of Deltona stock and therefore arguably upon the reasonableness of the actions taken by the Deltona board. For example, Topeka analyzed the value of land owned by Deltona (Items # 4 and # 11). Similar analyses apparently were made of Deltona's utilities (Item # 4). Documents such as these which analyze the worth of Deltona assets may in some sense help to establish the value Topeka itself places upon Deltona assets. As we've noted, however, the Deltona directors have never seen or considered any of these materials; nor does it seem terribly likely that Topeka would share its innermost analyses and projections about its valuation of Deltona's assets at the very time it seeks to consummate its investment with Deltona's Board of Directors.

Topeka's in house business, financial analyses and strategic information, therefore, can have no real bearing upon the exercised business judgment by the Deltona directors. At most, it may demonstrate how an independent corporate entity values Deltona assets. That relevance is, at best, indirect, circumstantial and attenuated. The central problem at issue is the apparently real and immediate harm which would inhere in compelling Topeka's production, and how to fairly weigh that harm against Plaintiff's need for discovery.

Rule 26, Federal Rules of Civil Procedure, governs the scope of discovery. Discovery is permitted of "any matter, not privileged, which is relevant to the subject matter ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Federal Rules of Civil Procedure. As described hereinabove, many of the withheld Topeka documents—particularly those which purport to analyze the value of Deltona assets—come within this liberal definition of discoverable materials. However, Rule 26(c) further provides that discovery be limited—or not had at all—where justice requires, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Subsection (7) of Rule 26 specifically authorizes a protective order prohibiting or designating the manner of disclosure of a "trade secret or other confidential re-

**326**

search, development, or commercial information." By its very terms, Rule 26(c) does not limit the circumstances where a protective order may lie. Morever, Rule 26(b)(1) authorizes the Court to limit the use of discovery where "the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive." In our judgment, both provisions call for protection of Topeka's documents.

■ Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery. In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets or confidential information is relevant and necessary to the action. The district court then must balance the need for protection of the trade secrets against the claim of injury resulting from disclosure. Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should be disclosed. Determination of whether the need outweighs the harm of disclosure falls within the sound discretion of the trial court. *Cutler v. Lewiston Daily Sun,* 105 F.R.D. 137, 140 (D.Maine 1985). *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure,* Section 2043 at 301–302 (1970). We stress, however, that under Rule 26(c) of the Federal Rules of Civil Procedure a party seeking to avoid disclosure of materials by protective order "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury...." *Citicorp v. Interbank Card Association,* 478 F.Supp. 756 (S.D.N.Y.1979). We find that Topeka has met that burden here.

■ Topeka does not, nor could it claim, that its financial strategy information is a secret patentable idea or a classic trade secret. Rather, they are wholly internally generated investigatory work, analyses and correspondence regarding a strategic investment decision. Those materials are apparently so closely guarded by Topeka at *this point* in *this litigation* because they memorialize Topeka's bargaining position and goals in its current negotiations with a party to the litigation: Deltona Corporation. Should Deltona discover this strategic information it would gain a tremendously unfair advantage in its negotiations. Indeed those negotiations could no longer be conducted at arm's length. Moreover, and perhaps of more significance in this matter, Empire, too, would gain a great strategic advantage in its corporate battle for control of Deltona by discovery of Topeka's high-priced and careful analysis of the merits of a large scale purchase of Deltona stock.

That Topeka's documents might be subject to protection under Rule 27(c)(7) is illustrated by *Tavoulareas v. Piro,* 93 F.R.D. 24 (D.D.C.1981). There the district court granted Mobil Corporation's motion for a protective order securing the confidentiality of commercial information sought in pre-trial discovery. The protective order was granted upon the affidavit of a vice president of Mobil, which described the sensitive nature of the documents in question.

"More specifically, Mr. MacDonald described the business relationships among Mobil, a Saudi Arabian marine company called Samarco, and the London-based Atlas Marine Company. He explained that the negotiation and implementation of business arrangements among these three companies revealed Mobil's strategy in maintaining access to substantial volumes of crude oil from Saudi Arabia. Mr. MacDonald also stressed the importance of keeping confidential 'a company's vessel operating costs and investment return, its internal decision-making and financial analysis procedures regarding the chartering ... of tankers, and its economic criteria applicable to decisions for the purchase or sale of vessels'."

*Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1012–13 (D.C.Cir.1984). The District Court found the Mobil documents sufficiently sensitive to warrant protection.

"Mobil has adequately specified the harm likely to result absent a protective order. As Mr. MacDonald attests, the public disclosure of many of these documents might undermine Mobil's relationship with the Kingdom of Saudi Arabia, hamper its ability to compete in the marine transportation business, and threaten its access to substantial volumes of crude oil from Saudi Arabia. Furthermore, many of the discovery requests appear likely to reveal confidential, internal Mobil documents dealing with strategy, negotiations, and long-range corporate planning. The conclusion is inescapable that public disclosure of these kind of sensitive corporate documents would cause Mobil competitive harm sufficient to warrant imposition of a protective order adequate in character and balanced to the needs of the parties."

*Tavoulareas v. Piro, supra* at 29.

Plaintiff's compulsion request relies upon only one case *Tobias v. Kwiatek*, 98 F.R.D. 513 (D.Vt.1983) in support of the argument that Topeka's documents are not the kind of confidential materials falling within the scope of Rule 26(c)(7). That case however does not present the compelling reasons for protection found in this case. In *Tobias*, plaintiff, a one-third shareholder of a corporation, was removed by defendants from his position as an officer thereof on the grounds that he breached various fiduciary duties to the corporation by instituting competing ventures. Defendant sought production of documents relating to the plaintiff's interest in one of those businesses. Plaintiff sought a protective order under Rule 26(c)(7) on the grounds that disclosure would cause plaintiff commercial damage. Ordering full disclosure, the Court first found the requested information went directly to the issue before that Court, and was therefore "highly relevant." Unlike the instant cause, the documents in *Tobias* were personally known to the plaintiff and therefore can be said to reveal a great deal

about the reasonableness of his conduct. Furthermore, the *Tobias* court was not presented with the spectre of catastrophic harm in the event of disclosure. By contrast here, protection is sought upon a specific and clear showing of immediate and irreparable harm. There can be little question that the instant case presents a far more compelling case for a protective order than did *Tobias*. Equally important the materials sought here are at best of limited relevance. Moreover, Plaintiff is in no way barred from preparing its own valuation analyses and retaining the services of its own experts.

The balancing of the difficult and somewhat speculative issues at hand clearly militate in favor of Topeka, and accordingly it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion to Compel the Production from Defendant Topeka is hereby DENIED.

## II. *Plaintiff's Emergency Motion to Amend Order Compelling Plaintiff to Produce Documents.*

By Order dated October 18, 1985 this Court directed Plaintiff to produce for Defendant Deltona Directors all preliminary proxy materials regarding the Deltona Corporation filed with the Securities and Exchange Commission. Upon receipt of that Order Plaintiff filed with this Court an Emergency Motion seeking amendment of that Order by adding a provision directing that Deltona hold the proxy materials in confidence and use such documents solely for the purposes of this litigation. Plaintiff urges the amendment on the grounds that, unless confidentiality is insured, Defendant may use the documents for its advantage in the impending proxy contest.

By Plaintiff's own admission during the October 16th hearing on Deltona's Motion to Compel, such an order of confidentiality would not be effective. This Court agrees. Deltona and its directors will review the preliminary proxy materials in preparation of an extensive series of depositions, and

ultimately, in preparation of the November 1st preliminary injunction hearing. Most likely, that review will extend beyond counsel and those witnesses to be deposed, to principals of the Defendant corporation and possibly to experts who may testify. Those documents, in turn, may easily become a part of the public record of these proceedings. The Court sees no meaningful and practical way to limit Defendant's use of Plaintiff's documents so that they not give an unfair advantage to Deltona in the expected proxy battle. Moreover, Plaintiff acknowledged that it's proxy materials may be released by the Securities and Exchange Commission as early as 10 days after their submission. Although some changes may be made to those documents by the Securities and Exchange Commission, in essence they will be released to shareholders in the very near future. With Plaintiff's own disclosure of the documents imminent, Plaintiff is unable to demonstrate such compelling harm as would justify the desired order of confidentiality. Plaintiff's Motion is accordingly DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Emergency Motion to Amend is hereby DENIED.

DONE AND ORDERED at Miami, Florida this 19th day of October, 1985.