**In re REMINGTON ARMS COMPANY, INC., Petitioner.**

**No. 90–2672.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1991.

Decided Dec. 31, 1991.

Karen Iverson, Kansas City, Missouri, argued (John W. Shaw, Karen M. Iverson and Peter F. Daniel on brief), for appellant.

Arthur R. Miller, Cambridge, Mass., argued (Alfred W. Cortese, Jr., David G. Norrell, Kathleen L. Blaner and Elizabeth A. Miller, Washington, D.C., and Arthur R. Miller, on brief), for amicus/appellant.

Richard C. Miller, Springfield, Mo., argued (Richard C. Miller and Rana L. Faaborg on brief), for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Remington Arms Company, Inc. has filed a petition for a writ of mandamus in response to the district court's denial of Remington's motion for a protective order that would prohibit the discovery of certain documents. The district court ordered Remington to produce documents that Remington claims contain trade secrets and ordered Remington to show cause why sanctions should not be imposed for Remington's refusal to comply with the district court's earlier verbal discovery order. We issue the writ of mandamus, vacate the district court's orders for discovery and to show cause, and remand for further proceedings consistent with this opinion.

## I.

John W. Hartman sued Remington as the result of a 1987 accident in which Hartman's gun, a Remington Model 700 bolt action rifle, allegedly discharged while Hartman was unloading the gun in the cab of his pickup truck. Hartman claims that he suffers a partial hearing loss as a result of this incident. Hartman asserted nine theories of negligence and strict liability in his complaint against Remington. In comprehensive requests for the production of documents, Hartman specifically sought information about Remington's "New Bolt Action Rifle" (NBAR) program. Remington objected to the request for NBAR documents, contending that they are confidential, highly proprietary trade secrets.

During a subsequent telephone conference with the district court, Hartman's counsel brought up the issue of the discoverability of the NBAR documents. Hartman's counsel asserted his opinion that the NBAR program is merely a contin-

uation of the Model 700 rifle. Remington argued that a protective order could not guard against unauthorized disclosure of NBAR documents and that it should not be required to produce them for discovery. The district court responded:

> Go ahead and produce them, and make up a protective order. You go ahead and produce them and we'll make a determination of whether they're admissible at trial. You go ahead and produce them. Anything else?

Remington then asked for an opportunity to brief the issue before the court entered an order directing Remington to produce NBAR documents, to which the district court replied: "Go ahead and produce them. If you want to take it up to the Eighth Circuit, you do it."

Remington then filed a motion for a protective order that discovery not be had, arguing that the disclosure of NBAR documents not be ordered because: (a) they are trade secrets; (b) Remington would suffer irreparable harm if the documents were disclosed; (c) Hartman could not establish both relevance and need for them; (d) a protective order could not adequately preserve the confidentiality of the information; and (e) public policy and constitutional considerations supported nondisclosure. Remington also requested that the court review the NBAR documents *in camera* to determine whether they are in fact trade secrets.

The district court denied Remington's motion for a protective order and directed Remington to produce NBAR documents without *in camera* review. Remington filed a petition for an emergency stay of the district court's order compelling discovery, pending the filing of a petition for extraordinary relief. We granted a stay, and Remington timely filed its petition for writ of mandamus.

## II.

■ We possess discretionary writ-issuing authority under the All Writs Act, 28 U.S.C. § 1651(b). This authority is to be used, however, only where there is clear abuse of discretion or usurpation of judicial power. *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 953 (8th Cir.), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979). With full appreciation of the longstanding admonition against reviewing non-appealable orders, *id.,* we believe that this case presents a situation in which we should invoke the power conferred by the All Writs Act.[1]

In *Iowa Beef,* we "found mandamus to be an appropriate vehicle to review orders compelling the production" of trade secrets in the form of confidential business information. *Id.* at 953. The court noted the "serious policy considerations which we deem sufficiently compelling to require immediate appellate attention." *Id.* at 954. The present case is closely analogous to the situation that existed in *Iowa Beef* and similarly raises important policy considerations relating to the compelled discovery of trade secrets, the release of which Remington argues will have the effect of thwarting innovation and hampering competition. *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

Remington argues that its position within the firearms industry and its ability to compete in the firearms market are threatened by the disclosure of documents that it claims to be confidential, formative research and development files, generated in an effort to create a distinctly different new bolt action rifle. It argues further that because its NBAR designs are so novel, premature disclosure will seriously affect its ability to obtain patents on new concepts and designs. Remington also contends that a protective order will not preserve confidentiality and cannot effectively

---

1. We find the present case to be distinguishable from *Sedlock by Sedlock v. Bic Corp.,* 926 F.2d 757 (8th Cir.1991). There, the district court apparently had given the defendant corporation an opportunity to establish the fact that the requested information constituted trade secrets and had entered an order affording the corporation at least some protection against wholesale disclosure of the requested information. In the present case, the district court gave Remington no opportunity whatsoever to establish that the NBAR documents constitute trade secrets.

limit the dissemination of this confidential information.

Remington argues that mandatory disclosure of the questioned documents would have the effect of destroying its incentive to improve product safety, contending that the adversarial use of post-manufacture research efforts will discourage the development of new products.

Remington argues that in light of the foregoing adverse consequences that it contends would follow from compelled production of the NBAR documents, the procedure followed by the district court in ordering the discovery of the documents was inadequate to protect Remington's property interests in the documents, denying Remington as it did both reasonable notice and a meaningful opportunity to be heard.

### III.

"Confidential business information has long been recognized as property." *Carpenter v. United States*, 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). "Because of the intangible nature of a trade secret, [however,] the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984). Public disclosure of trade secrets extinguishes the owner's property rights. *Id.*

Federal Rule of Civil Procedure 26(c)(7) anticipates that in certain cases, discovery of trade secrets should either be limited or not permitted. Rule 26 provides, in part, that

> for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> \*　\*　\*　\*　\*　\*
>
> (7) that a trade secret or other confidential research, development, or commercial

information not be disclosed or be disclosed only in a designated way[.]

Fed.R.Civ.P. 26(c).

In light of the protection afforded to trade secrets by Rule 26(c)(7), courts have attempted to reconcile the competing interests in trade secret discovery disputes. First, the party opposing discovery must show that the information is a "trade secret or other confidential research, development, or commercial information," under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740–41 (Fed.Cir.1987); *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir.1981); *Hartley Pen Co. v. United States Dist. Court*, 287 F.2d 324, 331 (9th Cir.1961); *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323 (S.D.Fla. 1985); *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 107 F.R.D. 288, 291 (D.Del.1985).

If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. *Coca–Cola Bottling Co.*, 107 F.R.D. at 293. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.

In the present case, the district court ordered production of the documents in question following a brief teleconference without affording Remington the opportunity to demonstrate that the documents contain trade secrets and that disclosure would be harmful. We conclude that in failing to provide Remington with the procedural protections afforded by Rule 26(c), the district court clearly abused its discretion.

On remand, the district court should afford Remington the opportunity to make a showing that the disputed documents contain trade secrets. It may (and probably should, given the highly charged relationship that has developed between the parties) examine the documents *in camera* in deciding this threshold question. If it determines that the NBAR documents are in fact trade secrets, the district court must then determine whether Hartman's discovery requests satisfy the test of relevance and need. Discovery should be denied unless Hartman establishes the relevance of the trade secrets to his case, demonstrates a true need for the information, and shows that the potential harm to Remington is outweighed by Hartman's need for discovery. *See Centurion*, 665 F.2d at 325 (citation omitted).

█ If Hartman makes these showings, it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties. *Seattle Times v. Rhinehart*, 467 U.S. 20, 35, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984) ("discovery may seriously implicate privacy interests of litigants"); *see also Centurion*, 665 F.2d at 325 n. 6. In drafting a protective order for the discovery of trade secrets, the district court may take into account the following considerations. First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. *See Centurion*, 665 F.2d at 326 n. 7. Second, the protective order should limit the persons who are given access to the trade secrets. *Id.* Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. *Spartanics, Ltd. v. Dynetics Engineering Corp.*, 54 F.R.D. 524, 527 (N.D.Ill.1972). Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order

may designate an attorney to serve as a custodian for all confidential documents. *See Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 48 (S.D.N.Y.1980).

On remand, the district court may or may not find that the NBAR documents are trade secrets under applicable Missouri law. Due credence must be given to Remington's claims of ownership of property, however, in light of the fact that those property rights might easily be lost through mandated disclosure.

Finally, we must express our concern about the effectiveness of a protective order in this case.[2] Remington contends that Hartman's counsel has violated the express terms of protective orders in past cases involving Remington. *See* Affidavit of John W. Shaw, Exhibit No. 9, Petitioner's Appendix (and attachments thereto); Affidavit of B. Lee Ware, Jr., Exhibit No. 11, Petitioner's Appendix. We have upheld a contempt order imposed upon an attorney who violated a protective order. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 630, 631 (8th Cir.1984). Such an after-the-fact remedy is largely ineffectual in a trade secrets case, however, for once the information is wrongfully released, the trade secret is lost forever and no sanction imposed on the violator can retrieve it. On remand, therefore, if the district court determines that the NBAR documents are trade secrets that would otherwise be discoverable under a protective order, it must determine whether any protective order, however carefully crafted, would prevent the unauthorized disclosure that Remington contends has occurred in the past.[3] If the district court concludes that a protective order will not prevent unauthorized disclosure by Hartman or access to the documents by third parties, it must then determine whether it should order that the documents not be produced at all, as contemplated by Rule 26(c)(7).

---

**2.** Such a concern was not a consideration in *Sedlock*, 926 F.2d at 759.

**3.** We make no finding that Hartman's counsel has made unauthorized disclosures in other cases invoking Remington. We leave it to the

district court to determine if such disclosures have been made and, if so, what effect such a finding should have upon the request for production of the NBAR documents in this case.

The writ of mandamus prayed for is issued. The orders requiring disclosure of the documents in question and directing Remington to show cause are vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.