ARES–SERONO, INC., Serono Laboratories, Inc., Applied Research Systems ARS Holding N.V., and Genzyme Corporation, Plaintiffs,

v.

ORGANON INTERNATIONAL B.V. and Organon, Inc., Defendants.

Civ. A. No. 92–11982–GN.

United States District Court, D. Massachusetts.

Sept. 27, 1993.

Dale A. Malone, John P. Iwanicki, Dennis D. Allegretti, Allegretti & Witcoff, Ltd., Boston, MA, Grantland G. Drutchas, Daniel A. Boehnan, Allegretti & Witcoff, Chicago, IL, for plaintiffs.

Berj A. Terzian, Isaac Jarkosvsky, Jennifer Gordon, Scott B. Familant, Pennie & Edmonds, New York City, Alexander H. Pratt, Jr., Peabody & Arnold, Boston, MA, for defendants.

*ORDER RE: ARES–SERONO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (DOCKET ENTRY # 79); ARES–SERONO'S RENEWED MOTION TO COMPEL PRODUCTION OF SELECTED "FDA–RELATED" DOCUMENTS (DOCKET ENTRY # 92)*

BOWLER, United States Magistrate Judge.

On April 22, 1993, plaintiffs Ares–Serono, Inc., Serono Laboratories, Inc., Applied Research Systems ARS Holding N.V. and Genzyme Corporation ("plaintiffs") filed a motion to compel production of documents in order to obtain allegedly relevant documents to prepare a response to the motion for partial summary judgment filed by defendants Organon International B.V. ("OIBV") and Organon, Inc. ("OI") (collectively: "defendants") (Docket Entry # 72). (Docket Entry # 79).

On May 6, 1993, defendants filed an opposition under seal in accordance with the terms of the stipulated protective order. (Docket Entry # 81).

On May 11, 1993, plaintiffs filed a motion for leave to file a reply brief to defendants' opposition. (Docket Entry # 84). There being no opposition, this court **ALLOWS** the motion for leave and will consider the attached reply brief in conjunction with issuing a ruling on the motions to compel (Docket Entry ## 79 & 92). Although not contained in the caption of the motion or the caption of the reply brief, the body of the reply brief requests sanctions in connection with traveling expenses and attorneys' fees incurred as a result of a deposition of Dr. Frank van Meel ("van Meel") scheduled for May 11, 1993.

Plaintiffs filed the reply brief on May 11, 1993, the same day as the scheduled deposition which apparently took place (Docket Entry # 94, Ex. A). Plaintiffs complain that they may need to redepose van Meel in the event they obtain the documents sought in their motion to compel. The request is premature inasmuch as there is little indication in the record of the necessity for a second deposition of van Meel. Plaintiffs also fail to indicate the amount of any expenses incurred and whether such expenses are reasonable. Plaintiffs should have attached affidavits detailing their expenses and filed their request after conducting van Meel's deposition. Defendants, however, did not file any papers related to this issue. Subject to a more complete showing of the amount of expenses actually incurred, the request for sanctions, construed as a motion for sanctions under Rule 37(a)(4), Fed.R.Civ.P., is **DENIED** without prejudice in all respects.

On June 18, 1993, this court conducted a hearing on the motion to compel. (Docket Entry # 90). At the hearing, this court denied the motion at that time subject to counsel reinspecting the disputed documents and filing a renewed motion to compel if necessary on or before July 9, 1993. (Docket Entry # 90). On July 9, 1993, plaintiffs filed a renewed motion to compel (Docket Entry # 92) renewing their original motion to compel (Docket Entry # 79). Both motions are therefore pending on the docket.

On July 14, 1993, defendants filed an opposition. (Docket Entry # 94). On July 23, 1993, this court conducted a second hearing and took the motion to renew (Docket Entry # 92) under advisement.

## BACKGROUND

According to the Second Amended Complaint (Docket Entry # 17), plaintiff Applied Research Systems ARS Holding N.V. is the exclusive licensee of U.S. Patent No. 4,923,-805 ("the '805 patent"), issued by the United States Patent and Trademark Office on May 8, 1990. The '805 patent involves biologically active human fertility follicle stimulating hormone ("FSH") which includes alpha and beta subunits. (Docket Entry # 17, Ex. A). In Count I plaintiffs maintain that defendants infringed the '805 patent by producing a recombinant follicle stimulating hormone ("rFSH")[1] outside the United States comprising alpha and beta subunits of FSH and then importing the rFSH into the United States for commercial purposes in violation of 35 U.S.C. § 271(g). (Docket Entry # 17).

In Count III, plaintiffs put forth a similar allegation of infringement with respect to U.S. Patent No. 5,156,957 ("the '957 patent") and allege that defendants' importation of rFSH into the United States for commercial purposes violates 35 U.S.C. § 271(g). Entitled "Follicle Stimulating Hormone," the '957 patent claims an alternate method of producing rFSH using expression vectors separately encoding alpha and beta subunits. Counts II and IV seek declaratory relief with respect to the '805 and '957 patents. (Docket Entry # 17 & Ex. B).

The '805 patent uses a single expression vector to encode alpha and beta subunits of FSH ("one vector"). The '957 patent uses separate expression vectors each encoding the alpha or beta subunit of FSH ("two vector"). (Docket Entry # 17).

---

1. Defendants represent that rFSH is created by genetically altering living organisms using techniques commonly known as gene splicing or genetic engineering. (Docket Entry # 73).

Defendants admit they are engaged in activities in the United States concerning the development of an rFSH product. (Docket Entry # 17, ¶ 29; Docket Entry # 71, ¶ 29). OIBV further admits that it produced an rFSH product outside the United States containing expression vectors encoding alpha and beta subunits. (Docket Entry # 17, ¶ 33; Docket Entry # 71, ¶ 33). Defendants also admit that they undertook preinvestigative new drug animal studies of rFSH in the United States and human studies abroad of rFSH to obtain regulatory approval to manufacture and sell an rFSH product in the United States. (Docket Entry # 17, ¶¶ 37 & 46; Docket Entry # 39, ¶¶ 37 & 46; Docket Entry # 71, ¶ 46).[2] As an affirmative defense confirmed in its answers to interrogatories, OI represents that it is preparing an investigational new drug application ("IND") to prepare a new drug application ("NDA") for filing with the Food and Drug Administration ("FDA"). (Docket Entry # 39, ¶ 50; Docket Entry # 94, Ex. B, ¶ 18). As stated by van Meel, defendants are presently in the process of compiling an IND for an rFSH product and hope to submit the IND to the FDA in August 1993. (Docket Entry # 94, Ex. A).

Plaintiffs represent that defendants initially produced an rFSH product through a one vector method. After learning of the '805 patent, defendants purportedly began developing a two vector method to produce an rFSH product for the purpose of eventually marketing the product in the United States. According to plaintiffs, defendants used research and data derived from developing the one vector program to gain FDA approval for the two vector program. Thereafter, defendants again switched their production choice and returned to producing an rFSH

product through a one vector program. (Docket Entry # 80). Hence, plaintiffs argue that research data and activities related to defendants' one vector program are synonymous to data used to support defendants' two vector program and are therefore relevant with respect to infringement. Defendants assert that the disputed documents are irrelevant inasmuch as they relate to the abandoned two vector program. (Docket Entry # 81).

In March 1993 defendants filed a motion for partial summary judgment. Defendants submit that their research and development activities are protected under 35 U.S.C. § 271(e)(1) ("section 271").[3] Defendants therefore seek summary judgment that their research and development activities will not infringe the patents in suit. The nature of the relief defendants request, both in the motion (Docket Entry # 72) and in the conclusion of the supporting memorandum (Docket Entry # 73), is a declaration that defendants' activities of importing, manufacturing, using and/or selling rFSH to develop and to submit information to the FDA for obtaining approval of defendants' rFSH product will not infringe the '805 and '957 patents in light of the safe harbor of section 271. Plaintiffs point out that defendants' motion does not identify specific acts which allegedly fall within section 271's safe harbor. Plaintiffs therefore urge that they need to obtain discovery of the disputed documents, which concern defendants' acts in obtaining regulatory approval, in order to effectively frame a response to the partial summary judgment motion. (Docket Entry # 93).

The documents at issue were apparently the subject matter of prior request(s) for production of documents.[4] In connection

2. OIBV is advised that its answer appears to mismatch certain paragraphs and reads, in part, as follows: "37. OIBV admits the allegations of Paragraph 38." (Docket Entry # 71, ¶ 37).

3. Section 271 provides a safe harbor for activities "reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs." 35 U.S.C. § 271(e)(1).

4. Neither party identifies a specific request for production of documents or attaches such a re-

quest for production to any pleading. The Joint Status Report notes that plaintiffs served document requests on defendants together with the original complaint and that plaintiffs have moved to compel discovery. (Docket Entry # 44). Correspondence between counsel refers to outstanding requests for production. (Docket Entry # 94, Ex. E–G). This court therefore assumes an outstanding request for production encompasses the documents at issue.

The absence of the request for production, however, necessarily complicates this court's task. In the future, the parties are directed to

thereto, defendants have in their possession eight boxes of documents. As part of a compromise and apparently at defendants' suggestion, plaintiffs inspected the eight boxes of documents in April 1993. When questioned at the June 18, 1993 hearing, plaintiffs' counsel could not identify specific documents they desired produced. (Tr. 41). Consequently, this court directed plaintiffs to reinspect the eight boxes and, if necessary, renew their motion. Plaintiffs thereafter renewed their motion requesting production of approximately five and one half of the remaining seven boxes of documents.[5] This court conducted a second hearing and the matter is therefore ripe for a decision.

## DISCUSSION

■ Rule 26 broadly defines the term relevancy at the discovery stage of litigation. A document is relevant therefore "if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D.Mass.1984); *see also Exxon Chemical Patents, Inc. v. Lubrizol Corporation*, 131 F.R.D. 668 (S.D.Tx.1990) (motion to compel in context of section 271 exemption).[6]

■ In order to effectively gage the reach of section 271 and consequently the merits of defendants' partial summary judgment motion, plaintiffs need to review the five and one half boxes of disputed documents. Notwithstanding defendants' contention that its partial summary judgment motion relates solely to an issue of law, the application of law to the facts requires examining the underlying documents to assess whether such documents fall within the legal protection afforded under section 271. Plaintiffs require access to the documents to test the sufficiency of defendants' assertions that such documents, and by implication defen-

dants' activities, are "reasonably related" to developing and submitting information to the FDA within the meaning of section 271. Furthermore, precluding plaintiffs' access to such documents would effectively endow defendants with the unilateral ability to decide the scope and the reach of section 271. In short, the documents are relevant to these proceedings.

■ Rule 26(c)(7), Fed.R.Civ.P. ("Rule 26(c)(7)"), dictates that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Although defendants fail to cite Rule 26(c)(7), the import of their argument is to retain protection of their confidential research data developed for purposes of obtaining FDA approval. Defendants, as the parties seeking protection, bear the burden of proving "good cause" by demonstrating a factual basis of potential harm. Fed.R.Civ.P. 27(c)(7); *see Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.1988), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

■ As noted in *Exxon* in the context of section 271, there is "no absolute privilege for trade secrets and similar confidential information." *Exxon Chemical Patents, Inc. v. Lubrizol Corporation*, 131 F.R.D. at 671. Nevertheless, this court is well aware that it must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information. *See Triangle Ink and Color Co., Inc. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636 (N.D.Ill. 1974). Moreover, the risk of competitive injury is particularly high when the opposing party is a business competitor. *See American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed.Cir.1987) (collecting cases in

submit the pertinent requests for documents or answers to interrogatories when seeking an order to compel discovery.

**5.** Plaintiffs represent that defendants agreed to provide copies of one of the eight boxes of documents. (Docket Entry # 93). After a second look, plaintiffs state that they no longer seek production of documents solely relating to the abandoned two vector product "at this time." They also attempted to avoid requesting dupli-

cate documents. Finally, they maintain that the designated documents fall within four small "transfer" boxes. (Docket Entry # 93).

**6.** In *Exxon*, the court allowed the party seeking protection to compile an affidavit within 15 days detailing the nature of the trade secrets and the manner in which disclosure would be harmful. *Id.* at 671.

which court presumes disclosure is more harmful to competitor); *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.*, 107 F.R.D. 288, 293 (D.Del.1985) (presuming that disclosure of trade secret to party who is not competitor is less harmful). Thus, the court must generally weigh on the one hand the right of a plaintiff to examine relevant evidence against the right of a defendant to protect its trade secrets and confidential data. *See, e.g., GTE Products Corp. v. Gee*, 112 F.R.D. 169, 172 (D.Mass.1986) (balancing risk of competitive injury against need for information); *Triangle Ink and Color Co. v. Sherwin–Williams Co.*, 61 F.R.D. at 636–637 (limiting access to confidential information to trial counsel and independent experts).

A protective order, however, already exists in this case. (Docket Entry # 70). Under that protective order, plaintiffs represent that defendants designated the disputed documents as falling within the "restricted confidential" category and that defendants produced the documents under this designated restriction for inspection only. (Docket Entry # 93, p. 9).

This court finds that the terms of the Stipulated Protective Order (Docket Entry # 70) adequately protect defendants. The restricted confidential category limits disclosure to outside litigation counsel, independent experts, paralegals and clerical employees. Plaintiffs' counsel represents that it has fully complied in the past with the terms of the Stipulated Protective Order. (Reply Brief, No Docket Entry No. Assigned). Defendants fail to demonstrate, by affidavit or other documentary evidence, that the harm resulting from disclosure under the restricted confidential category outweighs plaintiffs' need for the relevant information in responding to the partial summary judgment motion.

Because the enforcement or the effectiveness of a protective order is somewhat problematic, *see In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1033 (8th Cir.1991) (after the fact enforcement of protective order often ineffectual in trade secrets case), however, defendants may apply to this court for supplemental protection. In particular, should defendants continue to believe that disclosure under the restricted confidential category will result in harmful disclosure of its confidential research data, they should apply to this court for a supplemental protective order and demonstrate, by affidavit or otherwise, the necessity for supplemental protection.

■ Finally, while defendants permitted plaintiffs to inspect the disputed documents, they object to producing copies of the documents. In light of the above discussion, defendants are directed to copy the designated documents. Plaintiffs, however, as the parties seeking production and in light of defendants' suggestion to allow inspection, shall bear the expense of such copying. *See* 4A J. Moore, J. Lucas & D. Epstein, *Moore's Federal Practice* ¶ 34.19[1] (1993) (party will not be put to expense of preparing copies and photostats for adverse party's use); *see also* Notes of Advisory Committee, Rule 34, 1970 Amendment (court may require discovery party to pay costs under Rule 26(c)); *see, e.g., Monarch Insurance Company of Ohio v. Spach*, 281 F.2d 401, 413 & n. 30 (5th Cir. 1960); *Barrows v. Koninklijke Luchtvaart Maatschappij*, 11 F.R.D. 400, 401 (S.D.N.Y. 1951).

■ As a collateral matter, defendants' motion for partial summary judgment fails to attach a concise statement of material facts with references to the record. Plaintiffs' opposition similarly fails to attach a concise statement of material fact with references to evidentiary material in the record attached to the opposition. The motion and opposition therefore violate LR. 56.1. Such a violation constitutes a basis to deny the motion. LR. 56.1 states as follows:

Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to

affidavits, depositions and other documentation. Copies of all *referenced documentation* shall be filed as exhibits to the motion or opposition.

The parties shall therefore file such concise statements with evidentiary material on or before November 8, 1993. Prior to filing the statement(s), the parties shall confer in an attempt to reach an agreement as to the undisputed material facts contained in the record. In the event the parties can agree, they should file a joint statement of undisputed material facts in lieu of separate statements.[7]

The parties are also advised that they need not file separate "requests" for a hearing in addition to filing a motion and supporting memorandum. LR. 7.1(D) explains that requests for hearings in connection with a motion should be set off "in a separate paragraph of the motion or opposition.... with a centered caption, **'REQUEST FOR ORAL ARGUMENT.'**" Counsel are directed to obtain forthwith a copy of the local rules of this court from the clerk's office.

### CONCLUSION

In accordance with the foregoing discussion, plaintiffs' motion to compel (Docket Entry # 70) and renewed motion to compel (Docket Entry # 92) are **ALLOWED** to the extent that defendants are ordered to copy the designated five and one half boxes of documents. Such documents are subject to the terms of the Stipulated Protective Order. Plaintiffs shall bear the cost of such copying. The request for sanctions (Reply Brief, Filed 5/11/93, No Docket Entry No. Assigned) is **DENIED** without prejudice. Plaintiffs' motion for leave to file a reply brief (Docket Entry # 84) is **ALLOWED.** The parties shall file concise statement(s) of material facts in connection with defendants' motion for partial summary judgment on or before November 8, 1993.

---

**7.** In the event the parties can agree in part, they should file a joint statement of material facts to which they can agree and separate statements of undisputed material facts with respect to the areas in which they cannot agree.