**TAIYO INTERNATIONAL, INC., Plaintiff,**

v.

**PHYTO TECH CORP., doing business as Blue California, Defendant.**

Civ. No. 10–3378 (DSD/JJK).

United States District Court, D. Minnesota.

July 26, 2011.

Dean C. Eyler, Esq., and Joy Reopelle Anderson, Esq., Gray Plant Mooty Mooty & Bennett, PA, for Plaintiff.

Calvin L. Litsey, Esq., and Jeya Paul, Esq., Faegre & Benson LLP; and Daniel R. Foster, Esq., and Mandy H. Kim, Esq., McDermott Will & Emery LLP, for Defendant.

## ORDER AND MEMORANDUM

JEFFREY J. KEYES, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion to Compel and Request for Extension of Time to Complete Discovery (Doc. No. 43). A hearing was held on the matter on July 19, 2011. Based on the parties' submissions and arguments, together with all pleadings, records, and files herein, and the Court being fully advised in the premises, the Court grants Plaintiff's Motion to Compel and its request for an extension of the discovery deadline.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel (Doc. No. 43), is **GRANTED.** Defendant must provide to Plaintiff within twenty days of this Order:

    a. the identities and sources of the enzymes used in its production process for its L-theanine product;

    b. the identities and sources of all ingredients used in Defendant's L-theanine production process; and

    c. complete information about the equipment and procedures used in Defendant's L-theanine production process;

2. Plaintiff's Request for Extension of Time to Complete Discovery (Doc. No. 43), is **GRANTED.** An Amended Pretrial Scheduling Order will be issued separately; and

3. The following Memorandum is incorporated herein by reference.

## MEMORANDUM

Plaintiff, Taiyo International, Inc. ("Taiyo") has initiated this suit against Phyto Tech Corp., d/b/a Blue California ("Blue California") for false advertisement under the Lanham Act, 15 U.S.C. § 1125(a), deceptive trade practices under Minn.Stat. § 325D.44, unlawful trade practices under Minn.Stat. § 325D.13, and false statement in advertising under Minn.Stat. § 325F.69. In the present motion, Taiyo seeks to compel production of (1) the identities and sources of the enzymes used in Blue California's L-theanine [1] production process; (2) the identities and sources of all ingredients used in Blue California's L-theanine production process; and (3) complete information regarding the procedures and equipment used in Blue California's L-theanine production process. (Doc. No. 43.) Based on the parties' submissions and arguments, together with all pleadings, records,

---

1. According to the Complaint, L-theanine is an amino acid that has been shown in human clinical trials to have applications in reducing stress and anxiety, promoting relaxation, and improving concentration. (Doc. No. 1, Compl. ¶ 7.)

and files herein, and the Court being fully advised in the premises, the Court grants Taiyo's Motion to Compel and its request for an extension of the discovery deadline.

## BACKGROUND

This matter arises from the fact that Blue California advertises its L-theanine product as "naturally derived from green tea." (Compl. ¶ 12.) Taiyo, which also manufactures and sells L-theanine, brought this suit alleging Blue California's advertisement was false because its L-theanine was in fact not "naturally derived from green tea."

Before suit was brought, Taiyo became suspicious about Blue California's claim that its L-theanine was naturally derived from green tea because the process of extracting L-theanine from tea leaves is very expensive and this was inconsistent with the price charged by Blue California for its L-theanine supplement. To test whether Blue California's claims of natural derivation would pass scientific muster, Taiyo hired Molecular Isotope Technologies, LLC ("Molecular"). Molecular's Dr. John Jasper tested the isotopic composition of Blue California's L-theanine, which provided a specific ratio of isotopes characteristic of the L-theanine. This ratio was then compared to the ratio of isotopes existing in tea leaves. The two ratios were different, and this led Taiyo to believe that Blue California's L-theanine was not derived from green tea leaves. These results prompted Taiyo to send a cease-and-desist letter to Blue California demanding that Blue California not claim that its L-theanine was naturally derived from green tea.

On September 7, 2010, after Blue California's failure to respond to its letter, Taiyo filed the Complaint. Taiyo initially also filed a motion for preliminary injunction, but withdrew the motion in favor of expedited discovery. Taiyo's expedited discovery included document requests, interrogatories, and depositions of two of Blue California's representatives. The parties signed a stipulated Protective Order, which was entered by the Court on November 1, 2010. (Doc. Nos. 22, 24.)

**Discovery Requests**

Taiyo served its First Requests for Production of Documents and its First Set of Interrogatories to Blue California on November 18, 2010. Blue California responded to Taiyo's first discovery requests on December 20, 2010. Then on both December 22, 2010, and January 10, 2011, Blue California provided supplemental responses to Taiyo's discovery requests. Now, in its motion to compel, Taiyo alleges that Blue California's responses to these discovery requests are insufficient, particularly with respect to Request Nos. 3, 6, 7, and 8, as well as Interrogatories Nos. 1–5, because they do not describe Blue California's L-theanine production process in enough detail to allow Taiyo to replicate the process.

Blue California contends that it has produced documents that are relevant and non-privileged, and that it was responsive to Taiyo's discovery requests. Specifically, Blue California asserts that its response regarding Dr. Jasper's isotopic-composition analysis is sufficient and that no further discovery of the sort sought by Taiyo is necessary. Blue California explains that it starts its L-theanine production with green tea and other unidentified material and that the process "could result in altered isotope composition," but that "[t]he exact process or the exact chemical reaction is not clear because it happens in a complex mixture." (Doc. No. 51, Def.'s Mem. 6.) Blue California further contends that it has provided an adequate response in relation to Dr. Jasper's isotopic findings.

**Depositions of Blue California Representatives**

Taiyo deposed both Steven Chen and Dr. Oliver Yu, representatives of Blue California, regarding Blue California's L-theanine production process. In their description of the process, both Chen and Yu identified green tea leaves as a starting material, and Chen also admitted that a portion of the L-theanine product of Blue California's production process was derived from other substances that went through microbial fermentation. In testimony that Blue California designated as Confidential Attorneys' Eyes Only, Chen and Yu described the details of

Blue California's L-theanine production process and provided a general description of the mechanisms of Blue California's enzymes. However, both refused to identify the enzymes used in Blue California's production process because of their belief that the enzymes constituted trade-secret information.

### Discovery Dispute

Over the last two-and-a-half months, the parties have been meeting and corresponding over Taiyo's demand for detailed information about the ingredients and process utilized by Blue California in its production of L-theanine. But an impasse has been reached and Blue California has refused to disclose all of the starting ingredients, the specific enzymes, and the production process involved in its production of L-theanine, which, Blue California continues to maintain, is naturally derived from green tea.

### DISCUSSION

### I. Standard of Review

According to Rule 26(b) of the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information must not necessarily be admissible at trial if the information "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).

■ Although there is a broader standard for relevance in discovery than in the context of admissibility, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992). However, "there is no absolute privilege [against disclosure] for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (alteration in original) (quoting 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2043). In regard to trade secrets, Rule 26 provides in relevant part:

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . . .

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

Fed.R.Civ.P. 26(c). In contemplation of this section, the Eighth Circuit has stated that "Rule ... 26(c)[ (1)(G) ] anticipates that in certain cases, discovery of trade secrets should either be limited or not permitted." *In re Remington Arms Co.,* 952 F.2d 1029, 1032 (8th Cir.1991).

■ In recognition of the friction between the protection afforded to trade secrets by Rule 27(c)(1)(G) and the right to access relevant discovery, the Eighth Circuit has therefore formulated the following burden-shifting test: (1) the party opposing discovery must first demonstrate that the information at issue is a trade secret under Rule 26(c)(1)(G) and that its disclosure would be harmful to the party's interest in the property; (2) the burden then shifts to the requesting party to show that the information is relevant to the lawsuit and is necessary to prepare the case for trial; and (3) if the requesting party demonstrates relevance and need, the court must weigh the injury that disclosure might cause against the moving party's need for the information. *See In re Remington Arms Co.,* 952 F.2d at 1032 (citations omitted).

### II. Analysis

#### A. Relevance and Need of the Requested Information

■ Here, the parties are in dispute over step two of the aforementioned framework, as they dispute the relevance of the additional information requested about Blue California's production process. Taiyo asserts that the information it requests about Blue California's L-theanine production process is relevant to the litigation because it is an essential part of its false-advertising claim. Blue California, on the other hand, asserts that

the requested information is irrelevant and unnecessary for resolution of the litigation.

To support its claim of relevance, Taiyo argues that adequate information about Blue California's L-theanine production process is necessary for Taiyo to determine whether Blue California's L-theanine is naturally derived from green tea. In other words, it argues that the entire claim rests upon whether the statement that Blue California's L-theanine was "naturally derived from green tea" is accurate. In order to prove or disprove this claim, Taiyo argues that it needs access to information that would allow it to replicate Blue California's process. To replicate the production process, Taiyo asserts that it needs access to the identities and sources of the enzymes used by Blue California in its production process, the identities and sources of the ingredients used in the process, and specifics about the equipment and procedures used in Blue California's process. Taiyo argues that the information already produced by Blue California will not allow it to attempt to replicate the process because it lacks the specific protocol necessary to accurately replicate the process. In addition, Taiyo points to evidence produced by Blue California that raises doubt about the natural origins of its L-theanine.

Blue California argues that it never claims in the relevant L-theanine advertisements that 100% or another specific percentage of its L-theanine is naturally derived from green tea, and it states that it has produced enough information to show that its L-theanine is derived, to some unknown extent, from green tea. In addition, it points to the fact that Taiyo does not dispute that green tea leaves are one of the starting materials of Blue California's manufacturing process. Accordingly, Blue California argues that any additional information is unnecessary and irrelevant to Taiyo's ability to make its false-advertising case.

The Court agrees with Taiyo that its ability to replicate Blue California's L-theanine production process is relevant to its false-advertising claim. As the case relates to the origins of the L-theanine product, Taiyo must be afforded access to the requested information so that it can verify or debunk Blue California's characterization of its L-theanine as "naturally derived from green tea." In addition, the Court finds that the information currently available to Taiyo is insufficient to allow an expert to attempt to replicate Blue California's L-theanine protocol. The mere knowledge that green tea leaves are a starting material in the L-theanine production process is insufficient to show that the L-theanine is "naturally derived from green tea."

This is not a case where a competitor seeks access to the trade secrets of one of its rivals without a threshold showing to justify the disclosure. Here, an expert, Dr. Jaspers, tested the isotopic composition of Blue California's L-theanine and concluded that it was inconsistent with what a green-tea source would have produced. Blue California admits that, in addition to green tea, it uses other materials to produce the L-theanine, none of which come from green tea. (Doc. No. 46, Affidavit of Joy Anderson ("Anderson Aff.") at Exs. E, F.) And Blue California witnesses have testified that at least a portion of the L-theanine is produced through enzymatic conversion of amino acids not extracted from green tea, and Blue California claims that it does not know what percentage of Blue California's L-theanine is created through each process. Taken together, all of this establishes that Taiyo is entitled to full information about Blue California's process to test whether it works as Blue California claims and whether it actually results in an extraction of L-theanine from green tea.

### B. Potential Harm to Blue California

■ At the outset of this case, the Court entered a Protective Order, upon stipulation of the parties, that included the opportunity for a party to designate its most important trade-secret information as "Confidential Attorneys' Eyes Only." Where the parties have agreed to a protective order, particularly one with "Attorneys' Eyes Only" designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant. *See, e.g., Fair Isaac Corp. v. Equifax, Inc.*, No. 06–4112 (ADM/JSM), 2007 WL 2791168, at \*5 (D.Minn. Sept. 25, 2007) ("[O]rders forbidding any disclosure of trade

secrets or confidential information are rare.... Instead, where such information is relevant and necessary, it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties."); *see also Sedlock v. Bic Corp.*, 926 F.2d 757, 759 (8th Cir.1991) (same); *3M v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 250–51 (D.Minn. 1997) (same).

Here, the ability to designate its ingredients and production processes as "Confidential Attorneys' Eyes Only" will provide high-level protection to Blue California. The information designated as "Confidential Attorneys' Eyes Only" cannot be disclosed to Taiyo employees at all, although it can be shared with an outside expert who is "not currently or formerly employed by, consulting with, or otherwise associated with any party." (Doc. No. 24, Protective Order 2–3.) Further, Blue California will receive written notice at least ten days prior to the disclosure of the highly confidential information to the expert with a copy of the expert's "curriculum vitae that includes the individual's past and present occupations, employers, and positions, and any other business affiliations related to the subject matter of the litigation." (*Id.*) Blue California will then have the opportunity to object to prevent the disclosure to the expert before it occurs. And, when the expert obtains the material, he or she must agree, in writing, to be bound by the Protective Order and must acknowledge his or her understanding that "any violation of the Protective Order may subject [him or her] to sanctions by the Court." (*Id.* at 9.)

These extra protections are not commonplace in litigation. That is because utilizing a "Confidential Attorneys' Eyes Only" designation like this one results in a situation where, at least until trial, the opposing party itself cannot see the most crucial evidence in the case.[2] Thus, the "Confidential Attorneys' Eyes Only" designation should be limited to just what is in issue here—a party's most

secret information, such as product formulas and detailed manufacturing processes.

It is difficult to see how Blue California and its experienced, skilled counsel did not anticipate, when the Protective Order was negotiated, that, in this false-advertising litigation centered on Blue California's manufacturing process and its product formula, Blue California may have to produce its formula and processes, and that the "Confidential Attorneys' Eyes Only" in the Protective Order would be the safeguard applied to the production. Moreover, Blue California has made no showing that it is not adequately protected by the "Confidential Attorneys' Eyes Only" designation negotiated by its counsel.

For the reasons stated above, the Court orders Blue California to provide Taiyo with the discovery it seeks in this motion: (1) the identities and sources of the enzymes used in its L-theanine production process; (2) the identities and sources of all ingredients used in the production process; and (3) complete information about the equipment and procedures used in the production process.

### C. Extension of Discovery Deadline

Taiyo also seeks an extension of the pretrial deadline for fact discovery and nondispositive motions. Because the Court is ordering Blue California to produce additional information to Taiyo, the requested extension is granted. Consequently, an Amended Pretrial Scheduling Order will be filed separately. The Court will extend the fact-discovery and non-dispositive-motion deadlines to November 1, 2011, and will adjust other dates accordingly.

---

2. Both sides should be careful, indeed scrupulous, in marking any information as "Confidential" or "Confidential Attorneys' Eyes Only" to make sure that the opportunity to designate documents and testimony in this fashion is not abused. If it is abused, the Court will use its

inherent power to sanction the party engaged in the offense. Both sides are encouraged to remove any "over-designation" before any such information is filed with the Court in order to avoid this risk.